[No. A073123. First Dist., Div. Five. Nov. 19, 1996.]

NOELLE JORGENSEN, Plaintiff and Respondent, v.
TACO BELL CORP., Defendant and Appellant.

**COUNSEL**

Littler, Mendelson, Fastiff, Tichy & Mathiason, Nancy E. Pritikin and Kenneth B. Stratton for Defendant and Appellant.

Russo & Soroch, Leslie Prince Soroch and Brenda J. Russo for Plaintiff and Respondent.

**OPINION**

**PETERSON, P. J.**—Appellant Taco Bell Corp. (Taco Bell) contends the trial court abused its discretion by denying Taco Bell's motion to disqualify the counsel for plaintiff Noelle Jorgensen (Jorgensen). Jorgensen's counsel had retained an investigator to interview witnesses concerning facts relevant to Jorgensen's claims of sexual harassment, before her lawsuit against Taco Bell and one of its employees was filed. Taco Bell contends these interviews with its employees violated rule 2-100 of the California Rules of Professional Conduct (rule 2-100), because counsel for Taco Bell was not informed of the interviews, and they constituted attempts to interview parties without the consent of their counsel. Jorgensen and her counsel contend they did not

violate rule 2-100 because no lawsuit had been filed at the time of the interviews, and neither the employees of Taco Bell nor Taco Bell itself were parties represented by counsel at the time of the interviews. We agree, and conclude the trial court did not abuse its discretion in denying the motion to disqualify.

## I. FACTS AND PROCEDURAL HISTORY

Jorgensen is a former employee of Taco Bell. She filed this action in June 1995, alleging that she was sexually harassed and sexually assaulted by another Taco Bell employee, Javier Hernandez (Hernandez), her supervisor at Taco Bell, in July of 1994.

By November of 1994, Jorgensen had retained counsel. Jorgensen's counsel, seven months prior to filing this action, retained a private investigator, Linda Hoen, who interviewed the alleged harasser, Hernandez, and two other Taco Bell employees. No counsel for Hernandez, Taco Bell, or the other employees gave their consent for the interviews. Seven months after the interviews, Jorgensen filed this action against Hernandez and Taco Bell.

Taco Bell brought a motion to disqualify Jorgensen's counsel. The basis for Taco Bell's motion was that the interviews arranged by Jorgensen's counsel violated rule 2-100, which provides as follows, in pertinent part: "(A) While representing a client, a member shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer in the matter, unless the member has the consent of the other lawyer. [¶] (B) For purposes of this rule, a 'party' includes: [¶] (1) An officer, director, or managing agent of a corporation . . . ; or [¶] (2) . . . [A]n employee of [a] . . . corporation . . . , if the subject of the communication is any act or omission of such person in connection with the matter which may be binding upon or imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization."

Jorgensen opposed the motion to disqualify her counsel, contending rule 2-100 was not violated because there was no lawsuit pending, and her counsel did not know that either Taco Bell or any of its employees were a "party the member knows to be represented by another lawyer in the matter."

The trial court denied the motion to disqualify, noting that there was no lawsuit pending at the time of the interviews and that rule 2-100 was not violated because Jorgensen's counsel did not know that Taco Bell or its employees were represented by counsel in the matter.

## II.  DISCUSSION

We affirm the trial court's ruling.

■   We may review the trial court's denial of a motion to disqualify only for an abuse of discretion. (*Gregori* v. *Bank of America* (1989) 207 Cal.App.3d 291, 300 [254 Cal.Rptr. 853] (*Gregori*).)

■   This court (Division Five) held (per Justice Haning) in the case of *Triple A Machine Shop, Inc.* v. *State of California* (1989) 213 Cal.App.3d 131, 138-140 [261 Cal.Rptr. 493] (*Triple A*), that California Rules of Professional Conduct former rule 7-103, now rule 2-100, bars ex parte contact with current corporate employees who are specified in the rule as to any matter in which they are *known* to be represented by counsel. The rule is not limited to matters in litigation, and might be violated where, for instance, an attorney sought to interview the opposing party's covered employees as to a matter not yet in litigation, if the attorney *knew* the employees were represented by counsel in the matter. (213 Cal.App.3d at pp. 138-140.)

Here we find no abuse of discretion by the trial court in concluding Jorgensen's counsel did not know the interviewed employees were "represented by another lawyer in the matter." In fact, it appears the employees and Taco Bell were not represented by counsel in "the matter," since no such matter had yet been asserted against Taco Bell by Jorgensen. Rule 2-100 should be given a reasonable, commonsense interpretation, and should not be given a "broad or liberal interpretation" which would stretch the rule so as to cover situations which were not contemplated by the rule. (*Continental Ins. Co.* v. *Superior Court* (1995) 32 Cal.App.4th 94, 120-121 [37 Cal.Rptr.2d 843] (*Continental*).)

Taco Bell advocates such a broad, liberal interpretation of rule 2-100, contending that it should apply not simply where a lawyer "knows" the other person is represented, but also where the lawyer "should have known" that the other person *would* be represented. While such a standard may arguably find some support from certain ethics opinions issued by the American Bar Association (ABA) concerning its model rules of professional responsibility, such a standard is not supported by the wording of rule 2-100 or the case law decided under rule 2-100, which consistently applies the proscription against ex parte contact only where counsel "knows" the other person is represented by counsel. (See *Triple A*, *supra*, 213 Cal.App.3d at p. 140; *Continental*, *supra*, 32 Cal.App.4th at pp. 119-121.)

We also note that the interviews in issue here did not occur on the eve of the filing of the lawsuit. They occurred seven months prior to the filing of

the lawsuit. The record does not support Taco Bell's speculation that these interviews were conducted prior to the filing of the lawsuit as a subterfuge to allow violation of rule 2-100. It appears these interviews were routine prelitigation investigation activities, which many counsel engage in before deciding whether to send a demand letter or file a lawsuit. (See *Continental, supra*, 32 Cal.App.4th at p. 121.)

Taco Bell's proposal has wide and troubling implications. Under it, counsel for a plaintiff who is a tort victim would risk disciplinary action by interviewing adverse parties or their employees, if that counsel "should have known" such interviewees would be represented by some unidentified counsel *after* a complaint is filed. Reasonable investigations by counsel in advance of suit being filed to determine the bona fides of a client's claim would be precluded.

Every plaintiff's attorney should know, for example, that some defense counsel will, with rare exceptions, be provided by a liability insurance carrier to represent its insured after the filing of a complaint alleging acts within the ambit of the coverage. Similarly, every defense counsel should know that frequently an injured plaintiff who may, without counsel, preliminarily negotiate with the liability carrier's representative, will ordinarily retain counsel to file suit if no settlement is reached.

In these situations, Taco Bell's proposed expansion of the application of rule 2-100 would arguably mean that both plaintiff and defense attorneys would be subjected to disciplinary action for violating rule 2-100 if they directed interviews of claimants or alleged tortfeasors, although no determination to file suit had been made and no lawyer to file or defend it had been retained.

Taco Bell contends that it had unidentified "house counsel," as Jorgensen's attorney "should have known," available to communicate with Jorgensen's attorney before her investigator conducted interviews of its employees. Taco Bell reasons that Jorgensen's lawyer had to first identify its house counsel and seek that counsel's permission to interview Taco Bell's employees to avoid violation of rule 2-100. Numerous corporations in America have full- or part-time house counsel. That knowledge or presumptive knowledge does not trigger the application of rule 2-100, unless the claimant's lawyer knows *in fact* that such house counsel represents the person being interviewed when that interview is conducted.

It became apparent at oral argument that Taco Bell's contention had a curious and defense-oriented hook in it. Counsel conceded that before suit

was filed, persons not acting under the *immediate direction* of a lawyer but acting for prospective defendants, such as nonlawyers representing that party's liability insurance carrier or a corporate entity that is itself potentially liable on a claim which *might* go to future litigation, would be unimpeded by rule 2-100, as Taco Bell interprets it, in investigating claimants and taking their statements for purposes, inter alia, of evaluating their claims. Obviously, such persons furnish their reports to defense counsel retained if the claimants file suit. Counsel attempting the same evaluation for their plaintiff clients will be precluded from the same action as to prospective defendants, because they "should have known" any lawsuit filed, post such investigation for the claimants, will be defended by a lawyer. We cannot approve the uneven playing field this application of rule 2-100 would thus produce.

Frivolous litigation is frequently avoided by a careful lawyer's investigation of a client's claims before filing suit. Rule 2-100 should not be applied to require that investigation of such claims not be undertaken before suit is filed because the party or employee investigated *may* be expected to obtain counsel at a future time. This file-first investigate-later result which appellant would generate through its application of rule 2-100 is practically capable of compulsorily producing the type of frivolous litigation for which the Legislature has authorized the imposition of sanctions. (See, e.g., Code Civ. Proc., § 128.5.)

We will not interpret rule 2-100 so as manifestly to make the routine investigation of claims prior to filing of a lawsuit more difficult, when the persons being interviewed are *not* in fact known to be represented by counsel in the matter at the time of that interview. If corporations such as Taco Bell wish to avoid having their employees interviewed in such situations, they have a number of options. They can instruct their employees not to speak to claimant's investigators. If they are aware of a matter which has been threatened or asserted but which has not yet resulted in litigation, they can send the other party a letter warning that their employees are represented by counsel in the matter, and may not be interviewed under rule 2-100 without the consent of counsel. (See *Crane* v. *State Bar* (1981) 30 Cal.3d 117, 122 [177 Cal.Rptr. 670, 635 P.2d 163].) Taco Bell's contention, that certain ABA ethical opinions issued under its model rules might arguably be construed to bar the interviews undertaken in this case, does not obviate our duty to deal with rule 2-100 as currently written. (See *Continental, supra*, 32 Cal.App.4th at pp. 119-121.)

Taco Bell finally contends that the trial court should have disqualified Jorgensen's counsel even if she did not violate rule 2-100, under the trial

court's inherent power to control proceedings brought before it. (See *Chronometrics, Inc.* v. *Sysgen, Inc.* (1980) 110 Cal.App.3d 597, 605 [168 Cal.Rptr. 196].) The trial court declined to do so, and did not thereby abuse its discretion. (*Gregori, supra,* 207 Cal.App.3d at p. 300; cf. *Triple A, supra,* 213 Cal.App.3d at pp. 139-140; *Continental, supra,* 32 Cal.App.4th at p. 121.) It does not appear that Jorgensen's counsel intended to violate either rule 2-100 or any other standard of ethical conduct, nor does it even appear that she did so inadvertently. Rather, it appears that counsel sought to investigate whether Jorgensen's claims had merit before she filed a lawsuit. The trial court did not abuse its discretion in this case in failing to disqualify counsel for making that investigation. (See *Continental, supra,* 32 Cal.App.4th at p. 121; cf. also *Triple A, supra,* 213 Cal.App.3d at pp. 138-140.)

### III. DISPOSITION

The denial of the motion to disqualify counsel is affirmed.

Haning, J., and Snowden, J.,* concurred.

---

*Judge of the Napa Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.