[No. B113848. Second Dist., Div. Five. Dec. 8, 1997.]

LAWRENCE A. TRUITT, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, Real
Party in Interest.

## COUNSEL

Fogel, Feldman, Ostrov, Ringler & Klevens, Larry R. Feldman, Richard L. Rosett and Thomas H. Peters for Petitioner.

No appearance for Respondent.

Preston, Gates & Ellis and Gregory L. Evans for Real Party in Interest.

## OPINION

**GRIGNON, Acting P. J.**—Plaintiff and petitioner Lawrence A. Truitt seeks a writ of mandate directing respondent court to vacate its order imposing evidentiary sanctions against him for his attorneys' violation of California Rules of Professional Conduct, rule 2-100,[1] which prohibits ex parte communications with a represented opposing party. We conclude no improper ex parte communication took place, because Truitt's attorneys had no actual

---

[1] All future references to rules are to the California Rules of Professional Conduct.

knowledge of any representation of defendant and real party in interest the Atchison, Topeka & Santa Fe Railway Company (AT&SF)[2] at the time of the communication. Accordingly, respondent court abused its discretion by imposing evidentiary sanctions against Truitt. We grant the petition.

FACTS AND PROCEDURAL BACKGROUND

Truitt, an employee of AT&SF, was injured at work on March 14, 1996, when he was struck by a front-end loader operated by Keearn John Slowe. Truitt retained the law firm of Fogel, Feldman, Ostrov, Ringler & Klevens (FFOR&K) to represent him in bringing an action against AT&SF under the Federal Employers' Liability Act (FELA) (45 U.S.C. § 51 et seq.). On February 6, 1997, Attorney Richard L. Rosett of FFOR&K wrote to Russ Shelton in the claims department of AT&SF, informing him that Truitt was represented by FFOR&K and advising him to address all future communications to the law firm. Shelton is the general claims manager for AT&SF and is not an attorney.

A complaint was filed in respondent court on February 10, 1997, and served by mail on Shelton on February 14, 1997. AT&SF received the summons and complaint on February 18, 1997. Shelton, as "Director of Claims," executed an acknowledgment of receipt on March 5, 1997. Attorney Gregory L. Evans of the law firm of Preston, Gates & Ellis filed an answer on behalf of AT&SF on April 4, 1997. The answer was received in the offices of FFOR&K on April 8, 1997.

Between February 10 and 24, 1997, an investigator for FFOR&K contacted and obtained a written statement from Slowe.

On April 18, 1997, FFOR&K noticed the deposition of Slowe. Some difficulty in scheduling the deposition occurred, but it was finally scheduled for June 20, 1997. On June 17, 1997, Slowe informed Attorney Evans about the written statement he had given to FFOR&K's investigator.

On June 19, 1997, AT&SF filed a motion to quash the deposition subpoena for Slowe and for a protective order and evidentiary and monetary sanctions. In its motion, AT&SF contended that FFOR&K had violated rule 2-100 by using its investigator to obtain a written statement from Slowe, an employee of AT&SF, without the consent of AT&SF attorneys. Truitt opposed the motion, contending that his attorneys had no actual knowledge

---

[2]Burlington Northern & Santa Fe Railway Company is the successor in interest to the Atchison, Topeka & Santa Fe Railway Company; however, we will continue to refer to defendant as the Atchison, Topeka & Santa Fe Railway Company.

that AT&SF was represented by an attorney in connection with his litigation at the time the investigator made contact with Slowe. AT&SF responded that Attorney Rosett had formerly been employed as in-house counsel for AT&SF and knew that all complaints filed against AT&SF were routinely directed to in-house or outside counsel as soon as the complaint was served. AT&SF also asserted that FFOR&K had prosecuted dozens of complaints against AT&SF and was aware of its procedures. Attorney Rosett filed a supplemental declaration, acknowledging his employment as in-house counsel for AT&SF from 1969 to 1981, but stating he had been informed that AT&SF had disbanded its California in-house counsel department in 1990. Attorney Larry R. Feldman of FFOR&K also submitted a declaration confirming that AT&SF did not use in-house counsel to defend FELA actions in California.

After a hearing on the motion, respondent court granted the motion in part. Respondent court found that Truitt's attorneys knew, at the time the investigator contacted Slowe, that AT&SF was represented by counsel. Respondent court concluded the contact violated rule 2-100. The deposition of Slowe was permitted to go forward. Truitt's attorneys were required to turn over to counsel for AT&SF the original and all copies of Slowe's written statement as well as all notes pertaining thereto. Truitt's attorneys were also prohibited from using the written statement or its contents for any purpose. The request for monetary sanctions was denied. All further contacts in violation of rule 2-100 were prohibited.

### DISCUSSION

Rule 2-100 provides in pertinent part: "While representing a client, a member shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer in the matter, unless the member has the consent of the other lawyer. [¶] . . . For purposes of this rule, a 'party' includes: [¶] . . . [¶] An . . . employee of a[] . . . corporation, . . . if the subject of the communication is any act or omission of such person in connection with the matter which may be binding upon or imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization." "Contact with represented parties is proscribed to preserve the attorney-client relationship from an opposing attorney's intrusion and interference." (*Jackson* v. *Ingersoll-Rand Co.* (1996) 42 Cal.App.4th 1163, 1167 [50 Cal.Rptr.2d 66].)

■ There is no question that communication by the investigator for FFOR&K (indirect communication) with Slowe (a covered employee of a

corporate party) violated rule 2-100, *if* FFOR&K *knew* AT&SF was represented by a lawyer in the Truitt matter at the time of the communication. The issue to be decided in this proceeding is whether substantial evidence supports respondent court's finding that FFOR&K knew AT&SF was represented by a lawyer at the time the investigator obtained a statement from Slowe.

■ "[R]ule 2-100[] bars ex parte contact with current corporate employees who are specified in the rule as to any matter in which they are *known* to be represented by counsel. The rule is not limited to matters in litigation, and might be violated where, for instance, an attorney sought to interview the opposing party's covered employees as to a matter not yet in litigation, if the attorney *knew* the employees were represented by counsel in the matter." (*Jorgensen v. Taco Bell Corp.* (1996) 50 Cal.App.4th 1398, 1401 [58 Cal.Rptr.2d 178], original italics.) ■ "Rule 2-100 should be given a reasonable, commonsense interpretation, and should not be given a 'broad or liberal interpretation' which would stretch the rule so as to cover situations which were not contemplated by the rule." (*Ibid.*) "[T]he proscription against ex parte contact [applies] only where counsel 'knows' the other person is represented by counsel." (*Ibid.*) It does not apply where the attorney does not actually "know" but merely "should have known" that the opposing party was represented. (*Ibid.*)

The proscription against ex parte contact does not apply merely because an attorney should know that the opposing party will be represented by some unidentified attorney at some time after a complaint is filed. (*Jorgensen v. Taco Bell Corp., supra,* 50 Cal.App.4th at p. 1402.) ■ Knowledge that a corporation employs in-house counsel "does not trigger the application of rule 2-100, unless the claimant's lawyer knows *in fact* that such house counsel represents the person being interviewed when that interview is conducted." (*Ibid.*, original italics.)

A bright line rule is absolutely necessary in this situation. (Cf. *Mills Land & Water Co.* v. *Golden West Refining Co.* (1986) 186 Cal.App.3d 116, 129 [230 Cal.Rptr. 461] [clear and unequivocal line as to included employees is preferable].) Lawyers should not be at risk of disciplinary action for violating rule 2-100 because they "should have known" that an opposing party was represented or would be represented at some time in the future. Rule 2-100 does not provide for constructive knowledge. It provides only for actual knowledge. A requirement of actual knowledge does not deprive a represented party of the protection of the rule. "If corporations . . . wish to avoid having their employees interviewed in such situations, they have a number of options. They can instruct their employees not to speak to

claimant's investigators. If they are aware of a matter which has been threatened or asserted but which has not yet resulted in litigation, they can send the other party a letter warning that their employees are represented by counsel in the matter, and may not be interviewed under rule 2-100 without the consent of counsel." (*Jorgensen* v. *Taco Bell Corp., supra,* 50 Cal.App.4th at p. 1403.)

In this case, there is absolutely no evidence that the attorneys or the investigator for Truitt had any actual knowledge that AT&SF and its employees were represented by counsel in the Truitt matter at the time of the communications. FFOR&K received no oral or written communications from AT&SF on the matter and directed all of their pre-answer communications to the general manager of the claims department, a nonlawyer. The original notice to AT&SF that Truitt was represented by FFOR&K was directed to the claims manager, as was the summons and complaint. The acknowledgment of receipt of the summons and complaint was signed by the claims manager. FFOR&K had no actual notice of representation by an attorney until the answer was filed on April 4, 1997, and received in its office on April 8, 1997. By this time, the communications with Slowe had been concluded for over a month.

AT&SF argues that actual knowledge was obtained by virtue of prior contacts of Attorney Rosett with AT&SF. It is undisputed that Attorney Rosett worked as in-house counsel for AT&SF from 1969 to 1981. It is somewhat less clear that *all* complaints served on AT&SF during these years were immediately forwarded to in-house counsel for representation. We will assume that they were. However, both Attorney Rosett and Attorney Feldman declared that the in-house counsel department for AT&SF in California had been disbanded in 1990. AT&SF did not rebut these declarations. Instead, AT&SF provided vague declarations that these matters were always referred immediately either to in-house counsel, perhaps in another state, or outside counsel, and Attorneys Rosett and Feldman were aware of this procedure because of prior litigation against AT&SF. Even were this true, it would not constitute actual knowledge of representation in a particular matter.

We find it interesting that AT&SF provided no information concerning the representation "trail" in this matter. As we have noted, the representation letter and summons and complaint were sent to the claims manager. The summons and complaint were mailed on February 10, 1997, and received by AT&SF on February 18, 1997; the receipt was signed by the claims manager on March 5, 1997. The answer was filed by Attorney Evans on April 4, 1997, and received by FFOR&K on April 8, 1997. AT&SF provided no

evidence that any attorney representing it saw, touched or even heard about the Truitt matter or complaint until April 4, 1997. All that can be ascertained or reasonably inferred from this record is that the matter was referred to Attorney Evans sometime before April 4, 1997. It is extremely likely that the litigation was referred to Attorney Evans directly by the claims manager after the claims manager accepted service on March 5, 1997. By this time, the written statement from Slowe had been obtained and communication with him had been concluded. Thus, AT&SF did not even establish that it was actually represented by a lawyer at the time of the communication, much less that Truitt's lawyers had knowledge of any such actual representation. (Cf. *Jackson* v. *Ingersoll-Rand Co., supra,* 42 Cal.App.4th at p. 1167, fn. 2 [in order for violation of rule 2-100 to occur, party must actually be represented by an attorney and opposing counsel must know of such representation].)

AT&SF argues that an attorney should not be allowed to interview employees after litigation has commenced against the employer. Although this is one possible prohibition against ex parte contact, it is not the prohibition encompassed by rule 2-100. Moreover, such an ex parte prohibition would be problematical and raise a number of questions. For example, when does litigation commence—at the time the complaint is filed, or served? Is the prohibition applicable only to corporate employers, or does it also apply to partnerships and sole proprietorships? Does it matter whether the employer maintains in-house counsel? Does opposing counsel have to know of the existence of in-house counsel, or is opposing counsel under some obligation to inquire? We could continue. Suffice it to say that these are matters best left to the State Bar and the Legislature. Our job is to apply the existing ethical rule, and that rule clearly and unambiguously requires actual knowledge of representation in the pending matter at the time of the interview or communication in order for the prohibition against ex parte contact to come into play.

■ We hold that pursuant to rule 2-100, an attorney may not, either *before or after the commencement of litigation,* communicate ex parte with a covered employee of a corporation about a matter where the attorney actually knows the corporation and its employees are represented by an attorney in the matter at the time of the ex parte communication; constructive or presumptive knowledge of representation is insufficient to bring the ex parte contact prohibition into play.

■ Because there is no evidence to support a finding of actual knowledge by Truitt's attorneys of representation of AT&SF and its employees in

the Truitt matter at the time of the communication, respondent court abused its discretion in imposing evidentiary sanctions for a violation of rule 2-100.[3]

## DISPOSITION

A peremptory writ of mandate is issued, directing respondent court to vacate its order of July 16, 1997, and enter a new and different order denying the motion to quash and for sanctions in its entirety. Costs of this proceeding are awarded to Truitt.

Armstrong, J., and Godoy Perez, J., concurred.

[3]Because we have concluded the communication with Slowe was not prohibited by rule 2-100, we do not address the effect of section 60 of the FELA on rule 2-100.