Clarice STAHL, Plaintiff,

v.

**WAL–MART STORES,
INC., Defendant.**

No. Civ. A. 4:98CV16LN.

United States District Court,
S.D. Mississippi,
Jackson Division.

Dec. 7, 1998.

John Stuart Robinson, Jr., Heidelberg & Woodliff, Jackson, MS, Kenneth C. Miller, MacNeill & Buggington, P.A., Flowood, MS, for plaintiff.

Edley H. Jones, III, Attorney, Ridgeland, MS, for defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, Chief Judge.

There are a number of motions pending in this case, including plaintiff Clarice Stahl's motion for partial summary judgment and and Wal–Mart's motions to exclude testimony and to exclude expert testimony. These motions have been fully briefed by the parties and the court, having considered their memoranda, together with attachments, now undertakes to address and resolve these various motions.

### Plaintiff's Motion for Partial Summary Judgment

Plaintiff filed this suit against Wal–Mart seeking to recover damages for injuries she sustained as a result of a fall at the Meridian Wal–Mart store. Apparently, it is undisputed that Stahl fell as a result of slipping on a clear slippery liquid on the floor which Wal–Mart determined to have come from a leaking bottle of STP Tire Glaze, the cap of which was reported by Wal–Mart to have been cracked or broken or loose. Plaintiff now requests partial summary judgment against Wal–Mart on the issue of liability for the reason that Wal–Mart, in contravention of an explicit corporate policy regarding the preservation of evidence, disposed of the STP Tire Glaze bottle from which the offending substance leaked and has thereby deprived her of the opportunity to determine for herself the condition of the bottle. She submits that as a sanction for Wal–Mart's "gross misconduct," and specifically, its intentional destruction or spoliation of this evidence, the court should summarily adjudicate Wal–Mart liable for her injuries.[1] Wal–Mart has responded in opposition to plaintiff's motion and the court, having considered the parties' arguments on the motion together with pertinent authorities, concludes that plaintiff's motion should be denied.

Again, the premise of plaintiff's motion is that Wal–Mart, by having intentionally disposed of the STP Tire Glaze bottle, has effectively prevented her from being able to either determine whether she has a viable claim against Wal–Mart for her injuries and/or to prove any claim against Wal–Mart. In support of this premise, she points out that under Mississippi law, in order for her to recover from Wal–Mart for the injuries she sustained in her fall on Wal–Mart's premises, she must prove that

---

1. In her motion, plaintiff actually proffered alternative bases for summary judgment, suggesting—or so it seemed to the court—that this court either recognize an "independent tort of spoliation" and grant judgment for her on that basis, or that it enter judgment for her as a sanction for spoliation of evidence. She devoted several pages of her initial brief to the merit of the former alternative, concluding with the statements that "[p]laintiff submits that Mississippi would ... recognize this tort," and "[t]his type of conduct has brought about the adoption of an independent tort or spoliation in a number or jurisdictions and Mississippi would, in all likelihood, recognize this tort if presented with a situation such as this." Plaintiff now states in her rebuttal brief that she has not asked the court to recognize such a tort and has instead asked only that the court impose the sanction of summary judgment for Wal–Mart's alleged spoliation. She states, in fact, that by purporting to oppose recognition of a tort of intentional spoliation, Wal–Mart has "grossly mischaracterized [her] argument." Though the court, like Wal–Mart, misapprehended plaintiff's initial argument, given plaintiff's "clarification" of her position, it is necessary to consider only whether summary judgment should be entered as a sanction against Wal–Mart.

Wal–Mart had actual knowledge that tire glaze had leaked from the bottle, resulting in a dangerous condition of which it failed to warn its customers or remedy, *see Merritt v. Wal–Mart Stores, Inc.*, 911 F.Supp. 242, 244 (S.D.Miss.1995), or, alternatively, must prove one of the following scenarios: (1) that the tire glaze on the floor constituted a dangerous condition which had existed for a sufficient length of time that Wal–Mart may be found to have had constructive knowledge of the condition, *id.;* or (2) that Wal–Mart caused the tire glaze to be on the floor by some act of negligence on its part, *id.*[2] She submits that in the absence of proof that Wal–Mart had actual knowledge of the tire glaze on the floor, then she can only prove her case against Wal–Mart if she is able to prove constructive knowledge or active negligence by Wal–Mart, neither of which can be proven to a reasonable certainty without inspection of the bottle. To substantiate her position, plaintiff has adduced the affidavit of her expert, Dr. Richard Forbes, who explains that if the bottle were available for inspection, he could determine how much of the substance had leaked from the bottle and how long it would have taken for that amount of substance to leak onto the floor, which would, in turn, allow him to ascertain exactly (or,

more likely, approximately) how long the substance had been on the floor before the plaintiff slipped and fell. There would thus be a factual basis upon which he might opine whether Wal–Mart had constructive notice of the presence of the substance on the floor. He states further that if he had the bottle, he could also ascertain whether or not negligence by Wal–Mart's employees caused the leak, either by their having cut the bottle with a box cutter when opening the box which contained the tire glaze bottle or by some other act which could have damaged the bottle.

In *Tieken v. Clearing Niagara, Inc.*, No. 1:95CV340–D–D, 1997 WL 88180 (N.D.Miss.1997), the defendant moved for summary judgment based on the plaintiff's alleged spoliation of evidence. There, the defendant charged that plaintiff's expert had conducted a destructive test on a critical piece of evidence in a products liability suit, and thereby permanently and materially altered the evidence. The first question which Judge Davidson confronted was whether to apply Mississippi law, since the court's jurisdiction was based on diversity of citizenship, or whether federal law governed the court's power to impose sanctions for spoliation of evidence. Though observing that the Fifth Circuit's pro-

---

2. Citing *Coca Cola Bottling Co. v. Reeves*, 486 So.2d 374, 377–78 (Miss.1986), plaintiff argued in the memorandum in support of her motion that another theory for establishing liability of the "proprietor," Wal–Mart, was "strict liability," which would require proof that Wal–Mart "sold a product in a defective condition unreasonably dangerous to a consumer." Relative to this proposition, she argued that she could prevail *against Wal–Mart* on this theory only if she were able to prove that the tire glaze bottle was defective in Wal–Mart's hands—something she could not do without an inspection of the bottle. At the same time, however, she argued that Wal–Mart's actions have prevented her from proving any products liability claim which she might have had *against the product manufacturer*. Even after the court has read her rebuttal brief, in which she attempts to explain her position on this subject, it still is not altogether clear whether plaintiff is claiming that this court should grant summary judg-

ment against Wal–Mart on a products liability theory of recovery because of Wal–Mart's alleged spoliation of evidence. Her position seems more likely to be that she might have had a products liability claim *against the product manufacturer* but for Wal–Mart's having discarded the bottle. Even if plaintiff might have been able to assert a viable products-based claim against Wal–Mart, she has not alleged such a claim. And, since she is not asking the court to recognize a tort of intentional spoliation, the question of whether Wal–Mart's actions have prevented her from proceeding in such a suit against the product manufacturer is irrelevant. *Cf. Boyd v. Travelers Ins. Co.*, 166 Ill.2d 188, 209 Ill.Dec. 727, 652 N.E.2d 267, 270 n. 1 (Ill.1995) (allowing suit against employer for spoliation where plaintiff's employer lost gas heater which had exploded and injured plaintiff, thereby depriving him of key piece of evidence in his products liability lawsuit against the heater manufacturer).

nouncements on the issue have been "vague," *id.* at *3 (citing *Williams v. Briggs Co.*, 62 F.3d 703, 705 (5th Cir.1995)) (assuming district court was Erie-bound to apply Mississippi law to evidence spoliation), Judge Davidson concluded that since the standards were similar, application of either would be proper, *id.* The court then set forth these standards, explaining as follows:

> [T]he seminal case of *Vick v. Texas Employment Comm'n* [514 F.2d 734, 737 (5th Cir.1975)] sets forth the criterion necessary under Fifth Circuit law to merit application of the adverse inference rule. The *Vick* court held that
>
>> the adverse inference to be drawn from destruction of records is predicated on bad conduct of the Defendant. "Moreover, the circumstances of the act must manifest bad faith. Mere negligence is not enough, for it does not sustain an inference of consciousness of a weak case."
>
> *Vick*, 514 F.2d at 737. ... Thus, at least under federal law, [the plaintiff] must demonstrate that Dr. Benedict acted with bad faith. Furthermore, the sanction sought in *Vick*—application of the adverse inference rule—is not nearly as severe as that sought in this case—dismissal. The disparity of the sanctions sought lends itself to implementation of a disparity between the standards necessary to warrant the sanctions, thus indicating that perhaps more compelling evidence of bad faith is necessary to justify the more severe sanction of dismissal.

Mississippi law on the subject of sanctions for spoliation of evidence appears just as exacting:

> It is a general rule that the intentional spoliation of evidence relevant to a case raises a presumption, or, more properly, an inference, that this evidence would have been unfavorable to the case of the spoliator. Such a presumption or inference arises, however, only where the spoliation or destruction was intentional and indicates fraud and a desire to suppress the truth....

*Wilson v. State*, 661 So.2d 1109, 1115 (Miss.1993) (Smith, J., dissenting).

*Tieken*, 1997 WL 88180, at *3 (footnote and additional citations omitted). *See also Williams v. CSX Transp., Inc.*, 925 F.Supp. 447, 452 (S.D.Miss.1996) (citing *Vick* and denying plaintiff's request for "adverse inference" due to lack of evidence of bad faith on part of railroad which had lost or destroyed report which was relevant to plaintiff's case).

██ Given the applicable standards, as summarized by the court in *Tieken*, it follows that under either federal or state law, plaintiff would not be entitled even to an "adverse inference," much less to summary judgment, unless she were to prove that Wal–Mart intentionally discarded the tire glaze bottle. While not necessarily acknowledging that this is so,[3] plaintiff nevertheless maintains that she has adduced "overwhelming" proof to that effect and argues, then, that in light of the "compelling" evidence of Wal–Mart's bad faith and in accordance with Judge Davidson's reasoning in *Tieken*, "the more severe

---

**3.** Plaintiff advocates adoption by this court of the analysis set forth by the Third Circuit in *Schmid v. Milwaukee Electric Tool Corp.*, 13 F.3d 76 (3d Cir.1994), which involves weighing and balancing three factors in determining what sanction, if any, to impose for spoliation of evidence, those factors being "(1) the degree of fault of the party who [failed to preserve the evidence], (2) the degree of prejudice suffered by the opposing party, and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault will serve to deter such conduct by others in the future." *Id.* at 79. It is clear in this state and circuit, however, that in the absence of bad faith—i.e., evidence of culpability on the part of the spoliator—then there can be no adverse inference or presumption, and certainly no summary judgment, even when there is prejudice to the innocent party.

sanction of [summary judgment]" is justified. *Tieken*, 1997 WL 88180, at *3.

On the issue of whether Wal–Mart acted intentionally and in bad faith in disposing of the bottle, plaintiff points out that Wal–Mart had a written corporate policy to preserve all products involved in an accident;[4] that the preprinted incident folder completed by Monte Nichols, Wal–Mart's assistant store manager, the day following plaintiff's accident instructed that the store manager "keep all evidence;" and that all the Wal–Mart employees involved in the investigation of plaintiff's accident had received training concerning Wal–Mart's policy to preserve evidence. Plaintiff further points out specifically that Monte Nichols acknowledged in his deposition testimony that Wal–Mart has a policy regarding the preservation of evidence which he did not follow in the case of her accident. From these facts, she reasons:

> Monte Nichols knew about this policy yet he did not follow it. Why? The obvious answer is that the bottle was damaging to Wal–Mart in one of three ways:
>
> (1) By showing a leak which would have taken a lengthy time to produce the quantity of liquid present on the floor;
>
> (2) By showing negligence on the part of its employees in handling the product; or.
>
> (3) By showing a defect in the bottle.

In the court's opinion, even were the evidence cited by plaintiff the only proof on this issue, it would not necessarily lead to a finding that Wal–Mart intentionally disposed of the bottle and in so doing, acted in bad faith. One may just as reasonably infer from the facts noted by plaintiff that Wal–Mart's conduct in disposing of the bottle was negligent, i.e., that Wal–Mart employees knew about the policy yet mistakenly threw away the bottle.[5] Indeed, there is evidence in the record that Nichols was not even aware of Wal–Mart's preservation-of-evidence policy at the time of the plaintiff's accident and the ensuing investigation.[6] Moreover, Nichols explicitly denied that his failure to keep the bottle was intentional. Thus, even were summary judgment an appropriate and available sanction for intentional, bad faith spoliation of evidence, summary judgment would not be proper in this case since there are obviously genuine issues of material fact as to whether Wal–Mart's conduct rose to the level of bad faith, or rather was merely inadvertent and unintentional. Accordingly, plaintiff's motion

---

4. The policy requires that employees "keep any and all evidence that you find.... Especially for product claims (i.e., cans, other products) ... do not discard this evidence in case of a lawsuit."

5. Interestingly, in fact, plaintiff's own expert, David Eller, has stated his opinion that "[t]he disposal of the container in this instance constitutes negligence on the part of Wal–Mart." While his qualification to speak authoritatively on this subject as an "expert" is questionable, his "opinion" confirms that negligence is certainly a reasonable inference to be drawn from the facts thus far adduced.

6. Nichols testified as follows:

Q. Is there a policy at Wal–Mart to preserve evidence, such as products that may have been involved in an accident?
A. Not to my knowledge.

Q. Have you ever seen or read the Wal–Mart Corporate Policy?
A. Yes.
Q. Let me get you to read into the record what I've bracketed in pencil right there.
A. "Keep any and all evidence that you find, especially for product claims. Do not discard this evidence in case of a lawsuit."
Q. And if you'll flip to the page before that, what heading does that come under?
A. "Customer injury."
Q. Then would you agree with me that there is a policy regarding preservation of evidence?
A. Yes.
Q. You just didn't know about it till I showed it to you?
A. Correct.
Q. And you didn't know about it at the time of this accident?
A. No.

for partial summary judgment will be denied.[7]

## Wal–Mart's Motion to Exclude Testimony

Plaintiff's accident at the Meridian Wal–Mart store occurred on December 28, 1997. Two weeks later, on January 12, 1998, counsel for 'plaintiff, Stuart Robinson, Jr., contacted Monte Nichols, assistant manager of the Meridian Wal–Mart store, by telephone, to discuss the incident. It is the court's understanding that Robinson advised Nichols that he represented Stahl and proceeded to interview Nichols regarding the accident. Immediately following their conversation, Robinson sent to Nichols, by certified mail, a letter purporting to "confirm" the content of their conversation, reciting in his letter, *inter alia,* that Nichols had advised in their conversation that a customer had caused the tire glaze to be on the floor yet could not identify the customer nor identify any witness who saw a customer put the product on the floor; that Nichols had stated that he "had 'no idea' how long the [tire glaze] had been on the floor;" that "Walmart does not inspect the floor in regular intervals;" and that "a stock man does so when he is not getting shopping carts or assisting customers." Robinson asked in closing that "[s]hould any of this be incorrect, please contact me in writing immediately." One month later, on February 11, 1998, plaintiff filed the present suit. Neither before nor since that time has Nichols or Wal–Mart responded in any fashion to Robinson's "confirmation" letter.

In its motion to exclude testimony, Wal–Mart reasons that in view of the ex parte nature of the conversation between plaintiff's attorney and Nichols at a time when that attorney had accepted representation of the plaintiff for a claim relative to the injuries she received in her fall at Wal–Mart and at a time when litigation was evidently imminent, this court should not permit any mention of this conversation at the trial of this case, which would include prohibiting plaintiff's counsel from using the substance of the conversation to cross-examine or otherwise impeach Nichols. Wal–Mart's motion is founded on Mississippi Rule of Professional Conduct 4.2 which states:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows the party to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

The official comment to the rule states:

> If the case of an organization, this rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

Wal–Mart concedes that the interview of Nichols was conducted at a time when litigation had not yet been initiated, and further acknowledges, if only implicitly, that there were no attorneys representing Wal–Mart "in the matter" at the time of plaintiff's attorney's communication with Nichols. It argues that the conversation should nonetheless be excluded since it

---

7. Ultimately, Judge Davidson concluded in *Tieken,* as does this court, that genuine issues of material fact precluded entry of summary judgment. In so doing, he observed:

> The court does not take lightly the defendant's allegation of spoliation and indeed will fashion an appropriate remedy if the proof presented at trial indicates that such spoliation occurred. However, the court is

of the opinion that this matter is better left for a determination after proof has been presented at trial.

*Tieken,* 1997 WL 88180, at *4. If the proof adduced at trial does in fact show that Wal–Mart acted in bad faith, the court will then determine and impose an appropriate sanction.

was an obvious attempt by plaintiff's counsel to elicit statements by Nichols which would impute liability to Wal–Mart.

■■■ The court has no difficulty concluding that the proscription against attorney communication with a represented person or party of Rule 4.2 has force even before actual litigation is commenced. *See Miano v. AC & R Advertising, Inc.,* 148 F.R.D. 68, 77 (S.D.N.Y.1993); *White v. Illinois Central R.R. Co.,* 162 F.R.D. 118, 119 (S.D.Miss.1995) (holding that pre-suit interview of defendant's foreman by plaintiff's attorney's investigator without permission of the defendant's attorney was a violation of Rule 4.2 and hence improper); *see also* Geoffrey C. Hazard, Jr. and W. William Hodes, *The Law of Lawyering: A Handbook on The Model Rules of Professional Conduct,* § 4.2:105, at 738 (2d ed.1998) (cited in *Miano, supra*) (proper reading of rule would count as off limits any party with whom a lawyer already has an adverse relationship, whether or not litigation has been filed).[8] Thus, if a lawyer knows that an adverse party is represented by an attorney relating to the subject matter of his representation of a client, even if he has not yet filed suit, he may not communicate with that party unless authorized by that party's attorney. The question, then, is whether Wal–Mart was represented, or known by Robinson to be represented, "in the matter" of plaintiff's fall. In the court's opinion, it was not.

In *Miano v. AC & R Advertising, Inc.,* 148 F.R.D. 68, 79 (S.D.N.Y.1993), the corporate defendant, AC & R, contended that the plaintiff's attorney had violated Disciplinary Rule 7–104(A), from which Rule 4.2 is taken virtually verbatim, by recording

statements of the defendant's employees both before and after litigation was commenced. While acknowledging that the rule applied even to prelitigation communication and that actual commencement of litigation was not essential to application of the rule, the court nevertheless found that the prelitigation interviews at issue were permissible under the circumstances presented because it was not demonstrated that plaintiff's counsel knew that defendant was "represented" at the time of those interviews. In reaching this conclusion, the court rejected an argument similar to that advanced by Wal–Mart, explaining:

> With respect to the conversations Miano had with AC & R employees prior to March 5, 1991, I cannot conclude that Meirowitz (plaintiff's counsel) knew AC & R to be represented by counsel in matters relevant to Miano's termination or, indeed, that AC & R was actually represented. *I do not accept AC & R's contention that simply because it made use, on an as needed basis, of the services of various attorneys, that it should therefore be deemed to have been represented in this matter prior to AKOO's retention. On that theory, any person or entity which faced potential liability because of its conduct, could be considered to be "represented" as long as it had utilized an attorney's services in the past on other matters. Something more must be required to deem a party "represented" under the disciplinary rule.*

*Miano,* 148 F.R.D. at 79 (emphasis added). *See also Jorgensen v. Taco Bell Corp.,* 50 Cal.App.4th 1398, 58 Cal.Rptr.2d 178 (Cal. Ct.App.1996) (contact by plaintiff's lawyer

---

**8.** Prior to 1995, Rule 4.2 of the Model Rules of Professional Responsibility prohibited contact with a represented "party." The text of the rule was amended in 1995 to substitute the word "person" for "party" to "negate the idea that the rule applies only in pending litigation." Geoffrey C. Hazard, Jr. and W. William Hodes, *The Law of Lawyering: A Handbook on The Model Rules of Professional*

*Conduct,* § 4.2:105, at 738 (2d ed.1998). While the Mississippi rule still refers to "party" rather than person, it has been widely recognized that the proper and more reasonable interpretation of the rule, even with the "party" language, is that it prohibits even prelitigation contact with represented parties or persons. *See id.*

with employee of corporate defendant not improper in absence of showing counsel knew corporation was represented in "the matter"; that counsel probably knew potential defendant had in-house counsel insufficient to trigger the no-contact rule). In the court's opinion, the same reasoning applies in this case.

Plaintiff's counsel did all that was required of him: He advised Nichols that he represented Stahl in connection with a potential claim relating to her fall at the Wal–Mart store. Nichols thus was aware of Robinson's position, that Robinson's client's interest was adverse to Wal–Mart's interest; yet, while he professes that he was uncomfortable speaking with the attorney, he nevertheless did speak to him.[9] He did not decline to speak with him, nor did he instruct that Robinson direct his questions to Wal–Mart's attorneys.[10]

■ The court, then, will deny Wal–Mart's motion to exclude all evidence of the Robinson/Nichols conversation. However, the court will not allow evidence of Robinson's "confirmation letter" since it is merely the attorney's version of the conversation. The fact that neither Nichols nor Wal–Mart responded to dispute or refute the statements in that letter does nothing to change that fact and does not elevate its status one bit since neither had any obligation to respond.[11]

## Wal–Mart's Motion to Exclude Expert Testimony

■ In addition to its motion to exclude testimony regarding the conversation between Robinson and Nichols, Wal–Mart has moved to exclude the testimony of plaintiff's expert, David Eller, on the basis that Eller's opinion, as revealed in the expert report provided to Wal–Mart by plaintiff, is based exclusively on his review of the January 12, 1998 confirmation letter sent by Robinson to Nichols and on conversations with Robinson. Wal–Mart argues that "facts" related by the plaintiff's attorney and that attorney's self-serving characterization of a conversation with Wal–Mart's store manager are not the types of facts or data "reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject," Fed.R.Evid. 703, and that his opinion is therefore inadmissible for that reason, as well as for the additional reason that the information related to Eller by plaintiff's attorney was based on a conversation with Nichols which violated Rule 4.2 of the Code of Professional Responsibility. The court has already determined that the interview of Nichols did not violate Rule 4.2. However, the court does agree that an expert's opinion cannot validly and properly be based on nothing more than

9. Nichols has explained in an affidavit submitted by Wal–Mart in connection with its motion to exclude testimony that he "was uncomfortable speaking to [Robinson] as the attorney for a customer and, for that reason, I did not discuss with him in detail the training and procedures used at Wal–Mart regarding floor safety," and that "there were things I told him about Wal–Mart procedures that he did not incorporate into his confirmation letter." Nichols further states:

"Throughout the course of the conversation, I had a sense that Mr. Robinson was trying to shape my responses with his questions," and "I felt as if I was on the witness stand, and that Mr. Robinson was continually trying to coax something out of me. When I hesitated, he was not deterred, and pressed me for a response. Often, he tried to reshape my responses and characterize

them in a manner more favorable to his position."

10. Nichols does state that he suggested to Robinson that it would be better if he spoke with Claims Management, Inc., Wal–Mart's claims adjuster. But apparently he did not decline to answer questions himself.

11. Of course, plaintiff's counsel is bound not to ask questions of any witness which lack a factual basis. And, if Nichols denies having made statements attributed to him by Robinson or takes the position that Robinson has mischaracterized statements which he did make, then Robinson could only prove the substance of the conversation if he were to withdraw as counsel and assume the role of witness—since he is also bound by the rule that he may not act as both an advocate and witness in the case.

conversations with the plaintiff's attorney and that attorney's hearsay version of a conversation with an employee of the defendant. Thus, to the extent that Eller has based his opinion on the letter and conversations with Robinson, it is not well founded and is not admissible.

Plaintiff submits, though, that Eller, having recently, i.e., since the expiration of discovery, had the opportunity to review the deposition testimony of witnesses and particularly, Wal–Mart employees, and having been apprised of Wal–Mart's corporate policy regarding the inspection of floors, still maintains the opinion that Wal–Mart's floor inspection program was inadequate. Wal–Mart, so far as the court can tell, does not dispute that the evidence now cited by Eller in support of his opinion was, in fact, only recently made available to plaintiff, and in view of that circumstance, the court is reluctant at this time to conclude that Eller should be altogether precluded from testifying. However, it is not apparent to the court from Eller's affidavit submitted in response to Wal–Mart's motion that his opinion is now based only on permissible evidence and not also on his conversations with counsel and the confirmation letter of plaintiff's counsel. The court will, therefore, reserve ruling on Wal–Mart's motion and directs that plaintiff provide to Wal–Mart a report or affidavit from Eller within five days of the entry hereof explaining his opinion—*without reference to impermissible sources*. The court will then entertain argument from the parties relative to this issue.

### Conclusion

Based on the foregoing, it is ordered that plaintiff's motion for partial summary judgment is denied. It is further ordered that Wal–Mart's motion to exclude is denied. The court reserves ruling on Wal–Mart's motion to exclude expert testimony.