[Civ. No. 16627.   First Dist., Div. One.   Sept. 4, 1956.]

THOMAS J. MEEHAN, as Receiver, etc., et al., Respondents, v. STEWART B. HOPPS et al., Appellants.

*Assigned by Chairman of Judicial Council.

J. W. Ehrlich, Lloyd W. Dinkelspiel, Eugene S. Clifford and Heller, Ehrman, White & McAuliffe for Appellants.

Edmund G. Brown, Attorney General, Harold B. Haas, Deputy Attorney General, McCutcheon, Thomas, Matthew, Griffiths & Greene and Freitas, Allen, McCarthy & Bettini for Respondents.

BRAY, J.—This is an appeal from a certain order in an action brought by respondents as plaintiffs, against appellants as defendants, for an accounting and other relief on behalf of the policyholders, creditors and stockholders of the Rhode Island Insurance Company, in which it is charged that Stewart B. Hopps, former director, member of the executive committee and chairman of the board of the company, dominated and managed the company's affairs for his own personal gain in violation of his fiduciary duties. Defendants moved the trial court to restrain and enjoin the Providence, Rhode Island, law firm of Edwards and Angell, its partners, associates[1] and other counsel (to the extent that

---

[1]The firm, its partners and associates will hereafter, for brevity, be referred to as ''counsel.''

their knowledge of the subject matter of the action was derived from that firm) from further participation in the case and from disclosing information pertaining thereto. The motion was based upon the alleged dual relationship of Edwards and Angell towards Hopps and a claim that Hopps had turned over to that firm as his lawyers certain files, documents and other information which plaintiffs have used and have threatened to use against him in the present action. After a hearing[2] the motion was denied. Defendants appeal.[3]

### Questions Presented

(1) Does the evidence support the court's implied finding that counsel were never Hopps' personal attorneys, and (2) where an attorney represents a corporation dominated by one of its officers whose personal interests to a considerable extent are coincident with the interests of the company, does an attorney-client relationship exist between the attorney and the officer, depriving the attorney of the right to represent the receiver of the company in litigation against the officer?

### The Law

With legislative authority the Board of Governors of the State Bar of California have formulated rules of professional conduct approved by the Supreme Court. These rules are binding upon all members of the State Bar. (Bus. & Prof. Code, § 6077.)[4] Applicable here are rule 5: "A member of the State Bar shall not accept employment adverse to a client or former client, without the consent of the client or former client, relating to a matter in reference to which he has obtained confidential information by reason of or in the course of his employment by such client or former client"; rule 7: "A member of the State Bar shall not represent conflicting interests, except with the consent of all parties concerned." Section 6068, Business and Professions Code, provides: It is the duty of an attorney "(e) To maintain inviolate the confidence, and at every peril to himself to preserve the secrets, of his client."

As the law is clear, we deem it unnecessary to cite the

---

[2]It occupied 11 days, during which oral and documentary evidence was received. The transcript contains 1183 pages.

[3]See *Meehan* v. *Hopps* (1955), 45 Cal.2d 213 [288 P.2d 267], holding the order denying the motion appealable.

[4]The firm of Edwards and Angell are the attorneys for the receiver, and the attorneys of that firm representing the receiver in the action were admitted by the trial court to the California State Bar for the purpose of participating in this case. None of them appear of record on this appeal.

many cases holding that an attorney who attempts to use against the interests of his former client information gained while the attorney-client relationship existed, may be enjoined from so doing.

The question first to be determined is:

1. *Had there been an attorney-client relationship between counsel and Hopps?*

The determination of that question is one of law. (*DeLong v. Miller*, 133 Cal.App.2d 175, 178 [283 P.2d 762].) However, where there is a conflict in the evidence the factual basis for the determination must first be determined, and it is for the trial court to evaluate the evidence. (*Id.*, p. 179.)

On the question of whether counsel ever represented Hopps as his attorney, the evidence is directly conflicting. Concededly the firm never charged nor received payment from Hopps for any services whatever. The services which Hopps claims were for him personally were paid for by Rhode Island. Soon after Hopps became connected with the company, counsel ceased to act as general counsel for it. Thereafter they were employed on special matters from time to time. At the time counsel first met Hopps they were working for Rhode Island on a merger of the Merchants Insurance Company into the former. Rhode Island's chairman asked counsel to draw a contract for the employment of Hopps, which was done. Hopps claims that the attorney drawing the contract advised him as well as the company. The attorney denied this and claimed that Hopps consulted his own lawyer, Farber, exclusively concerning the contract. Hopps testified that he confided in and was advised by counsel concerning his personal involvement in the affairs of Rhode Island; that he turned over to counsel his personal files; that Attorney Winsor of the firm was a friendly advisor and legal confidant and familiar with Hopps' personal affairs; that the firm undertook to represent Hopps' personal interest in the California controversy[5] and in a number of other matters. We deem it unnecessary to detail the evidence concerning the matters testified to by Hopps as showing a personal attorney and client relationship between him and counsel. Suffice it to say that evidence to the contrary on all matters was presented by Edwards and Angell. The question is pri-

[5]This was a conflict between the Insurance Commissioner of California and Rhode Island (see *Rhode Island Ins. Co.* v. *Downey*, 95 Cal.App.2d 220 [212 P.2d 965]) in which the actions of Hopps were looked upon with disfavor by the commissioner.

marily one of credibility. The trial court obviously disbelieved Hopps.[6]

There are four matters in which appellants particularly claim that counsel acted personally for Hopps.

(1) The preparation of the employment contract between Rhode Island and Hopps. While Hopps does not claim that he employed counsel in this behalf but that Gilman, of counsel, advised him personally, Gilman denied this. Gilman had been handling for Rhode Island, a proposed merger of Merchants Insurance Company with it. Watson, Rhode Island's chairman, asked Gilman to draw the employment contract. Gilman conferred with both Hopps and Watson, sending copies of the contract when prepared to both. In the letter to Hopps accompanying the proposed contract Gilman stated that if it was not satisfactory to Hopps Gilman would take up with Watson any proposed changes. It frequently happens that one retained by a client to draft an agreement between him and another, will send such agreement to the other, asking for the latter's suggestions concerning it, which suggestions the drafter will take up with his client. This statement did not convert Gilman's relationship from attorney for Rhode Island to attorney for Hopps in any respect. The agreement was not to become effective unless the merger was made, and provided that Hopps was to have the right to be interested in the Merchants Insurance Company's dealing with Rhode Island and was only required to give part of his time to the latter. Winsor, of counsel, called on Hopps in New York in connection with the merger. None of these matters changed counsel's relationship as attorney for Rhode Island into attorney for Hopps as well. In his deposition Hopps stated that the work done by counsel on the employment contract was done for Rhode Island. At the trial he retracted that statement. This contract was later amended, apparently to Hopps' advantage. Counsel had nothing to do with the change. No attack is made upon the validity, propriety or effect of the employment contract.

(2) Approximately nine years after the contract was drawn, counsel were employed by Rhode Island in connection with a controversy with Cuban interests. It involved nine companies and individuals including Hopps and Rhode Island

---

[6] While there were no findings, we must assume that the trial court actually found all matters necessary to support the trial court's ruling. Findings are not necessary on the determination of a motion to disqualify an attorney. (*DeLong* v. *Miller, supra,* 133 Cal.App.2d 175, 178.)

on the American side, and seven on the Cuban side. It was actually a fight for control. Although the controversy had been going on for approximately seven years, counsel had nothing to do with it until approximately three months prior to its settlement. At Watson's request, counsel were employed to represent Rhode Island. At counsel's request Hopps prepared and gave them data concerning the background and history of the controversy and his interest in it. One of the most important problems was whether a proxy held by Hopps or those held by the Cuban interests should prevail. Hopps prepared memoranda concerning these, sending copies to Rhode Island's executive committee as well as to counsel. Counsel advised Rhode Island that only Hopps' proxy could be considered. The fact that counsel so advised, and the other matters they did in connection with the controversy, did not make them attorneys for Hopps.

(3) The Pioneer Equitable Settlement. This involved a dispute between Rhode Island on one side, the Pioneer Equitable and other companies and an individual on the other. Hopps had interests on both sides. There were a number of lawyers representing Rhode Island in this matter including counsel, who were employed by Rhode Island as special counsel in connection with a suit over custodian funds included in the controversy. Counsel denied Hopps' assertion that their special duty in the controversy involved any consideration by them of Hopps' personal interest nor any advice to him concerning them.

(4) The California controversy. As above stated, this was a controversy between Rhode Island and the Insurance Commissioner of California. Counsel were employed to bring a suit in the Rhode Island federal court to restrain the effect of the California decree appointing the commissioner conservator of Rhode Island. Counsel had no connection with the matter prior to this decree. In addition to proceedings in the federal court, counsel endeavored to work out a settlement of the controversy with the commissioner. Richards, of counsel, after consultation with Hopps and the obtaining of data from Hopps and other company officers, went to California for that purpose. Richards was told by the California authorities that the commissioner objected to Hopps' association with the company. Richards testified that he told them that he would not discuss personalities, but wanted to work out an arrangement by which the company could continue in

business in California. During the negotiations in California, Hopps came out as well as other members of counsel, and together they prepared memoranda to be submitted to the commissioner's counsel. Here again there was nothing done by counsel or information received by them, which in anywise made them attorneys for Hopps. While they refused to agree to Hopps' removal from a position of authority in the company, or even to discuss such a change, they were not representing Hopps in so doing, but as attorneys for the company were refusing to discuss the matter of the removal of its president.

Appellants point out that the "contemporaneous record" is replete with instances where Hopps presented memoranda and material to counsel and spent considerable time in conference with counsel, all to assist them in the preparation of the various proceedings in which they were engaged for the corporation. These are matters which Hopps' position as an officer of the corporation, and particularly one who dictated, or at least was instrumental in determining, the policy of the corporation in the particular matter, required him to give the corporation.

▮ Disregarding the testimony of Hopps, as we are required to do on this appeal, we can find nothing in the record to show any relationship of attorney and client between Hopps and counsel, nor that he gave them any data, or disclosed to them any information which he as an officer of the company was not required by his position to do, nor which they as attorneys for the company in the matters entrusted to them, were not entitled to receive.

2. *Effect of representation of the Company.*

Appellant has not cited, nor have we found, any case holding that an attorney for a corporation is disqualified from representing it in an action brought by it against one of its officers, nor that in such an action the attorney may not use information received from such officers in connection with company matters. ▮ The attorney for a corporation represents it, its stockholders and its officers in their representative capacity. He in nowise represents the officers personally. It would be a sorry state of affairs if when a controversy arises between an attorney's corporate client and one of its officers he could not use on behalf of his client information which that officer was required by reason of his position with the corporation to give to the attorney.

Kingman, of counsel, testified that on May 26, 1950, White,

the then president of the company, came to counsel's office and informed him that the company would have to go into receivership and that Hopps stated that he was going to get counsel appointed as cocounsel for the receiver with another firm of attorneys. Richards, of counsel, testified that later he informed Hopps that any receivership might involve any officer or director of the company. Winsor testified that he and others of counsel stated to Hopps that if the firm accepted employment by the receiver the firm would have but one loyalty and that it would be the firm's duty to prosecute any claims against any past or present officers or directors. Hopps stated that there were no claims against him and he was not worried. Thereafter at a conference between two members of counsel, Hopps and the then general counsel for Rhode Island and others, legal problems concerning the receivership were discussed. The general counsel stated that he saw no problem in counsel's acceptance of employment by the receiver, as counsel had never represented Hopps, he being Hopps' personal attorney. Winsor then stated that the problem was not a legal one but a personal one and the general counsel stated that no question would ever be raised and asked Hopps whether that was right. Hopps replied that it was. While the above mentioned statements were denied by both Hopps and the general counsel, such denial merely made a conflict in the evidence to be resolved by the trial court. The fact that counsel, as attorney for the receiver, requested and received Hopps' cooperation in certain receivership matters, that prior to their appointment as receiver, counsel on behalf of the company had prepared an answer in which it alleged that the officers, directors and agents of the company were not at fault, in nowise affected their right to represent the receiver, nor to participate in an action in which the receiver claims that Hopps, one of the officers, was at fault. If Hopps' action in arranging for the appointment did not constitute a consent to counsel being appointed attorneys for the receiver and acting in all respects as their duty as attorneys for the receiver required, such action indicates at least that Hopps originally did not consider that counsel had been his personal attorneys nor that he had disclosed to them any information over and above what his position with the company required him to disclose.

Cases cited by appellants where attorneys were enjoined from proceeding against former clients are easily distinguishable from our case. In all of them the relationship of attorney

and client actually had existed between the attorney and the party against whom the attorney was now acting. *Wutchumna Water Co.* v. *Bailey*, 216 Cal. 564 [15 P.2d 505] : A discharged attorney attempted to appear practically on the opposite side of a controversy in which he formerly for many years represented the former client. *Brown* v. *Miller* (1923), 286 F. 994 [52 App.D.C. 330] : The attorney had formerly been employed by the Alien Property Custodian during a period when the custodian had charge of the affairs of a certain company. While he did not act for the custodian in connection with that company's affairs, he had access to its files, had examined letters and papers concerning the closing of the company's affairs, and had an intimate knowledge of the method of doing business in the custodian's office. He attempted to appear adversely against the custodian in connection with the company's affairs. The court held that in addition to his access to the files his intimate knowledge of the method of doing business in the custodian's office disqualified him from acting as attorney in this matter. *Consolidated Theatres* v. *Warner Bros. Circuit Management Corp.* (1954), 216 F. 2d 920 : An attorney who had been in the office of the law firm defending a motion picture producer in anti-trust litigation attempted to represent an exhibitor's anti-trust damage suit against the producer. *United States* v. *Bishop* (1937), 90 F.2d 65: An attorney represented the government on the first trial of an action by a veteran on a war risk policy. On the second trial of the same issue he attempted to represent the veteran. *Watson* v. *Watson* (1939), 171 Misc. 175 [11 N.Y.S.2d 537] : A wife sued to annul a marriage on the ground of the husband's previous conviction of a crime. The attorneys who had defended the husband in the criminal proceeding and who had obtained from him the history of his life attempted to represent the wife in the annulment action. The other cases cited by appellants relate to situations where the attorney either had represented the person whom he was now appearing against in the same matter or one connected with it or had advised other counsel representing the person he was now proceeding against. In none of the cases was there a situation where the attorney for a corporation was appearing for the corporation adversely to a former officer thereof.

Assuming that some of the information obtained from Hopps by counsel as representatives of the corporation is that upon which the receiver's contention that Hopps domi-

nated the corporation, its officers and companies, to its damage, is partially based, nevertheless such fact would not prevent counsel from representing either the corporation or the receiver in a controversy with Hopps nor from using that information against him. To hold that it would do so, would, in effect, grant an immunity to Hopps to which he was not entitled. ▮ The fact that in the several matters in which counsel represented the corporation what appeared to be for the benefit of the corporation also was for Hopps' benefit as a principal stockholder and because of his interest in the allied companies, did not make counsel his personal attorneys. If this were true, then the attorney representing a corporation in any given matter becomes the personal attorney of each stockholder because the attorney's actions benefiting the corporation likewise benefit the stockholder. Such relationship would disqualify the attorney from acting adversely to the stockholder concerning that particular matter in any controversy between the stockholder and a third party, but obviously would not prevent the attorney from representing the corporation in any controversy between it and the stockholder. As attorneys for the corporation, counsel's first duty is to it. Likewise, as an officer of the corporation, it was Hopps' duty to disclose to it all information necessary for its purposes. To hold that the giving of such information in that more or less intimate relationship which necessarily must exist between an officer of the corporation and its attorneys would prevent the corporation attorneys from thereafter using it in favor of the corporation in litigation against the officer, would be unfair to the corporation and its stockholders, and would violate the above mentioned very important precept, namely, that the attorney's first duty is to his client. Were appellants' contention correct, in all litigation between a corporation and a former officer, more time of the court would be spent in determining, as each bit of evidence appeared, whether it was obtained by the corporation attorney from the officer than in determining the merits of the litigation.

The order is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied October 4, 1956, and appellants' petition for a hearing by the Supreme Court was denied October 31, 1956.