[No. G031093. Fourth Dist., Div. Three. June 11, 2003.]

GABRIEL KOO et al., Plaintiffs and Respondents, v.
RUBIO'S RESTAURANTS, INC., Defendant and Appellant;

KERRY O. BARTLETT et al., Plaintiffs and Respondents, v.
RUBIO'S RESTAURANTS, INC., Defendant and Appellant.

## COUNSEL

Carlton, DiSante & Freudenberger, Timothy M. Freudenberger and Jennifer White-Sperling for Defendant and Appellant.

Righetti Wynne, Matthew Righetti, John Glugoski; McInerney & McInerney, Kevin McInerney and Kelly McInerney for Plaintiffs and Respondents.

## OPINION

**MOORE, J.**—An attorney representing a corporate defendant in a class action lawsuit concerning overtime wages for managers declared before the court that his firm represented both the defendant and its managers. He later clarified that his only intention in so declaring was to put opposing counsel on notice that the defendant corporation's managerial agents were "represented parties" to the extent provided in State Bar Rules of Professional Conduct, rule 2-100,[1] but that he certainly did not mean to convey the impression that he represented the managers in their individual capacities. Of course, the obvious albeit unspoken corollary was that if the proscriptions of rule 2-100 were successfully invoked, his client would gain a tactical advantage in discovery. In any event, the attorney's supplemental declarations were too late. He had already conveyed the impression that he baldly professed to represent all parties to the action, both the plaintiffs and the defendant. The trial court disqualified his firm from further participation in the case. The defendant challenges the disqualification on appeal.

We hold that an attorney's unilateral declaration regarding representation cannot, by itself, create an attorney-client relationship when none otherwise exists. Here, there was no evidence, other than the erroneous declaration, that the law firm in fact represented the interests of the managers both as corporate representatives and as potential class members. There was no evidence that any of the potential class members had hired the law firm.

---

[1] All subsequent references to rules are to the State Bar Rules of Professional Conduct, unless otherwise noted.

There being no attorney-client relationship, it was an abuse of discretion to disqualify the law firm, thereby necessitating that the defendant find another law firm to pick up the ball and continue the defense of the potentially massive and costly lawsuit. We reverse and remand.

I

FACTS

### A. Class Action Filings

Kerry O. Bartlett (Bartlett) filed a class action complaint, on behalf of himself and others similarly situated, alleging that defendant Rubio's Restaurants, Inc. (Rubio's) failed to pay salaried general managers and assistant managers overtime compensation (*Bartlett v. Rubio's Restaurants, Inc.* (Super. Ct. Orange County, No. 01CC00319)) (the *Bartlett* action). Gabriel Koo (Koo) filed a similar class action complaint (*Koo v. Rubio's Restaurant, Inc.* (Super. Ct. Orange County, No. 01CC00231)) (the *Koo* action).

### B. Motion to Compel

The law firm of Righetti Wynne (Righetti), representing Bartlett, sought to discover the names, addresses and telephone numbers of all of Rubio's managers. Rubio's objected to the request. Consequently, Righetti filed a motion to compel responses to interrogatories, stating the information sought was directly relevant to class certification.

In response to the motion to compel, the law firm of Carlton, DiSante & Freudenberger (Carlton), representing Rubio's, filed an opposition, a responsive separate statement, and a supporting declaration of counsel. The responsive separate statement and declaration of counsel each contained wording that may have been merely sloppy, or may have been crafted when the writer's attention was focused on winning the immediate discovery battle.

Among other things, Rubio's responsive separate statement contained the following language: "[Rule] 2-100 prohibits *ex parte* communications with a represented party about the subject of the representation. Here, Rubio's counsel represents Rubio's current assistant and general managers. (Freudenberger Decl., [¶] 2.) Therefore, Plaintiff's counsel cannot directly contact these individuals without Rubio's consent."[2] The responsive statement, in distinguishing the case of *Atari, Inc. v. Superior Court* (1985) 166

---

[2]Rule 2-100(A), (B) provides: "(A) While representing a client, a member shall not communicate directly or indirectly about the subject of the representation with a party the

Cal.App.3d 867 [212 Cal.Rptr. 773] (dealing with the right of the defendant to contact potential class members), also stated: "Further, *Atari* does not address a plaintiff's counsel's right to directly contact *current managerial* employees represented by defendant's counsel, as is the case here." In his declaration in support of the opposition, Attorney Timothy M. Freudenberger (Freudenberger) stated flatly: "Rubio's has retained my law firm to represent all of its district managers, general managers, and assistant managers in connection with this lawsuit. As such, my firm represents all current managerial employees of Rubio's in this matter."

The motion to compel in the *Bartlett* action was heard before Judge Raymond J. Ikola. Judge Ikola indicated a need to impose some regulation on Bartlett's contact with the current Rubio's managers. Counsel for Bartlett remarked at the hearing that Rubio's counsel was claiming to represent both the employer and certain members of the potential class. He further expressed his opinion that it was a conflict of interest. In response, Freudenberger stated, "My firm represents Rubio's. We have an attorney-client relationship with Rubio's. By virtue of that, we represent the managerial agents—the managers of Rubio's in—in the case of any communication or depositions with the plaintiffs' counsel."

The judge remarked that little discovery had been done and that in order to develop facts relevant to class certification Bartlett could take a representative sampling of the depositions of current Rubio's managers. He further explained to Bartlett's counsel that he could have full access to the current managers, but only by deposition. A formal order to that effect was entered.

## C. *Consolidation*

Subsequently, the *Bartlett* and *Koo* actions were consolidated, with the *Koo* action designated the lead case. The cases were assigned to Judge C. Robert Jameson for all purposes.

## D. *Motion to Disqualify*

Shortly thereafter, Righetti, on behalf of Bartlett, filed a motion to disqualify Carlton, on the basis of the statements Rubio's and Freudenberger

member knows to be represented by another lawyer in the matter, unless the member has the consent of the other lawyer. [¶] (B) For purposes of this rule, a 'party' includes: [¶] (1) An officer, director, or managing agent of a corporation or association . . . ; or [¶] (2) An association member or an employee of an association, corporation, or partnership, if the subject of the communication is any act or omission of such person in connection with the matter which may be binding upon or imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization."

had made in opposing the motion to compel. The motion to disqualify cited the language contained in Rubio's responsive separate statement and in Freudenberger's declaration.

Rubio's filed an opposition to the motion to disqualify, coupled with a second declaration of Freudenberger. Rubio's tried hard to clarify its previous loose language with respect to Carlton's representation of the individual managers. It endeavored to make clear that the statements of both itself and Freudenberger, made in opposition to the motion to compel, were not intended to establish an attorney-client relationship with the current managing agents of the corporation. Rather, they were intended only to assert the application of rule 2-100 with respect to those managing agents and to put Righetti on notice that it was required to comply with the rule.

Rubio's further explained why it was so important to inform Righetti of its assertion that rule 2-100 was applicable, given the prior history between Righetti and Carlton in unrelated litigation. Righetti and Carlton had previously opposed each other in another class action, *Perry v. U.S. Bank* (Super. Ct. Alameda County, No. 824460) (the *Perry* action). According to Rubio's, Righetti, representing the named plaintiff in the *Perry* action, had contacted numerous current managerial employees of the defendant corporation by mail and telephone. Carlton, on behalf of the defendant corporation, filed a motion to disqualify Righetti. Attorney Edward J. Wynne of the Righetti firm filed a declaration in the *Perry* action explaining that Righetti's communications with absent class members took place in order to investigate the case. He further declared that until he was served with the motion to disqualify his firm, he "had no idea that [d]efense counsel claimed to represent any absent class members . . . ." Rubio's anticipated that Righetti would employ the same tactics in this litigation, unless put on notice of the claimed application of rule 2-100.

Despite Rubio's explanation, at the hearing on Bartlett's motion to disqualify, the court indicated Carlton appeared to have an irremediable conflict. In response, Freudenberger reiterated that Carlton was "not counsel to any current managers of Rubio's. [It was] counsel to Rubio's, the corporate defendant, and only Rubio's." He continued: "[W]e represent Rubio's only. And our representation of managerial agents of Rubio's is only in their representative capacity as managerial agents of Rubio's. We absolutely do not, have not, have never stated that we represent current managers in their individual capacity. We certainly do not. We represent Rubio's only, the

corporate defendant."[3] The court, having heard Freudenberger's explanation, granted the motion to disqualify.

### E. Motion for Reconsideration

Having been unsuccessful on its legal arguments in its opposition to the motion to disqualify, Rubio's resolved to try to put some factual information before the court concerning the lack of any actual attorney-client relationship between Carlton and Rubio's individual managers. It filed a motion for reconsideration. In that motion, Rubio's conceded that the first Freudenberger declaration was poorly worded.

In addition, Rubio's stated: "The declaration was incorrectly interpreted as meaning that [Carlton] had undertaken the representation of the individual interests of Rubio's current assistant and general managers, in addition to Rubio's interests, in this litigation. Any such interpretation, however, is completely inaccurate. [Carlton] has been retained by, and only represents, Rubio's in this litigation. [¶] Moreover, [Carlton] has never taken any action in furtherance of a representation of the individual interests of Rubio's current assistant and general managers. No attorney or other employee of [Carlton] has had any contact with any of Rubio's current assistant and general managers. [Carlton] has obtained no confidential information from these individuals nor provided these individuals with any advice as to their rights in this litigation. In short, [Carlton] has **no** attorney-client relationship whatsoever with Rubio's current assistant and general managers. Without an attorney-client relationship, [Carlton] cannot be disqualified for purportedly representing clients with potentially conflicting interests." (Boldface in original.)

In support of its position, Rubio's offered yet another declaration of Freudenberger. Freudenberger reiterated that Carlton had had no contact with any of Rubio's current assistant or general managers and that its only client in the litigation was Rubio's.[4]

The court denied the motion for reconsideration. Rubio's filed an appeal from the disqualification order.

---

[3]Freudenberger further explained before the court: "Rubio's can only act and speak through its managerial agents. And for purposes of [rule 2-100], those managerial agents, the people who can speak for and bind Rubio's, those managerial agents are considered represented parties in their representative capacity, not in their individual capacity. We represent them in their representative capacity on behalf of Rubio's. And that's a critical, critical distinction. [¶] Obviously for this purported conflict to be an issue, an attorney-client relationship must be established between the parties that are allegedly in conflict. There is no attorney-client relationship established between my firm and the current managers of Rubio's."

[4]Freudenberger further declared: "Any other interpretation of my previous declaration is simply the result of imprecise wording. If I had the opportunity to reword that declaration I would clarify that [Carlton's] representation of the Rubio's current assistant and general

II

ANALYSIS

A. *Standard of Review*

█ In reviewing a court order granting a motion to disqualify, we generally apply the abuse of discretion standard. (*Frazier v. Superior Court* (2002) 97 Cal.App.4th 23, 28 [118 Cal.Rptr.2d 129].) "In deciding whether the trial court abused its discretion, '[w]e are . . . bound . . . by the substantial evidence rule. [Citations.] . . . The judgment of the trial court is presumed correct; all intendments and presumptions are indulged to support the judgment; conflicts in the declarations must be resolved in favor of the prevailing party, and the trial court's resolution of any factual disputes arising from the evidence is conclusive. [Citations.]' [Citation.]" (*Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Technology, Inc.* (1999) 69 Cal.App.4th 1399, 1403 [82 Cal.Rptr.2d 326].)

B. *Basis of Disqualification*

The order disqualifying Carlton contains no findings and the record contains no statement of decision. However, at the hearing on the motion to disqualify, the court articulated its viewpoint that Freudenberger's first declaration, to the effect that he had been retained to represent Rubio's managers, gave rise to an irremediable conflict. Taking these comments into consideration, Bartlett and Koo conclude that Carlton was disqualified due to a violation of rule 3-310.

Rule 3-310(C)(1), (2) provides: "A member shall not, without the informed written consent of each client: [¶] (1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or [¶] (2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict . . . ." " '[I]n all but a few instances, the rule of disqualification in simultaneous representation cases is a *per se* or "automatic" one. [Citations.]' " (*Gilbert v. National Corp. for Housing Partnerships* (1999) 71 Cal.App.4th 1240, 1256 [84 Cal.Rptr.2d 204].)

█ According to Bartlett and Koo, this clinches it. As they see it, Freudenberger declared that Carlton simultaneously represented both the

managers was only in their representative capacities on behalf of Rubio's for the purposes of [rule] 2-100, by virtue of their status as managerial agents of Rubio's. I would also clarify that [Carlton] has not established an attorney-client relationship with these individuals and has no intent of establishing an attorney-client relationship with these individuals because [Carlton's] only client in this litigation is Rubio's."

potential class members, i.e., Rubio's managers, and the defendant employer, i.e., Rubio's. As far as Bartlett and Koo are concerned, since Carlton apparently did not obtain conflict waivers from its various clients, this should be the end of the discussion. They contend Freudenberger's declaration was not only substantial evidence, but unequivocal evidence supporting the order. Furthermore, they insist that it would have been an abuse of discretion had the court denied the motion to disqualify.

We disagree. Disqualification was not proper unless an attorney-client relationship existed between Carlton and the managers. (*Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Technology, Inc., supra,* 69 Cal.App.4th at p. 1404.) ▮ "Before an attorney may be disqualified from representing a party in litigation because his representation of that party is adverse to the interest of a current or former client, it must first be established that the party seeking the attorney's disqualification was or is 'represented' by the attorney in a manner giving rise to an attorney-client relationship. [Citations.]" (*Civil Service Com. v. Superior Court* (1984) 163 Cal.App.3d 70, 76-77 [209 Cal.Rptr. 159].) The burden is on the party seeking disqualification to establish the attorney-client relationship. (*In re Lee G.* (1991) 1 Cal.App.4th 17, 27 [1 Cal.Rptr.2d 375].)

C. *Attorney-client Relationship*

(1) *Creation of Relationship*

▮ Here, Bartlett and Koo failed to meet their burden, because Freudenberger's declaration alone did not suffice to create an attorney-client relationship. An attorney-client relationship is not created by the unilateral declaration of one party to the relationship. (See *Fox v. Pollack* (1986) 181 Cal.App.3d 954, 959 [226 Cal.Rptr. 532] [individuals cannot unilaterally create an attorney-client relationship without the agreement of the attorney].) Rather, the relationship can only be created by contract, express or implied. (*Responsible Citizens v. Superior Court* (1993) 16 Cal.App.4th 1717, 1732 [20 Cal.Rptr.2d 756]; *Fox v. Pollack, supra,* 181 Cal.App.3d at p. 959.)

Freudenberger, in an effort to urge the application of rule 2-100, declared that his firm represented both Rubio's and its managers. But Freudenberger's loose language in that declaration cannot serve to create an attorney-client relationship if no express or implied contract in fact existed between Carlton and the individual managers. There is no evidence that the individual managers agreed to be represented by Carlton.

(2) *Evidence of Relationship*

Aside from the first two Freudenberger declarations, the only other evidence submitted to the court before it ruled on the motion to disqualify was

the declaration of Deborah A. Beasley, Rubio's director of human resources. In her declaration, Beasley stated: "Rubio's Restaurants, Inc. has retained [Carlton] to represent it in [the *Bartlett* action] and [the *Koo* action]. Rubio's has also, as a matter of course, instructed [Carlton] to represent its managerial agents, including Rubio's current assistant and general managers, as part of its representation of Rubio's, and on behalf of Rubio's, in this litigation."

The term "managerial agents" would appear to be derived from rule 2-100(B), which provides that a "party" represented by counsel, for the purposes of the rule, includes a "managing agent of a corporation." In other words, it would appear Rubio's intention was to invoke the proscriptions of rule 2-100 against ex parte communications with its managing agents, who were deemed represented parties within the meaning of the rule.

It would also appear that the intention, as expressed in the Beasley declaration, was for Carlton to represent the general and assistant managers in their capacities as representatives of the corporation, inasmuch as they can only be "managerial agents" when they act in their representative capacities. There is no indication that Rubio's hired Carlton to represent the managers in the pursuit of their individual claims, if any, against Rubio's. Furthermore, just as Freudenberger lacked the ability to single-handedly create an attorney-client relationship between Carlton and the managers in their individual capacities, Beasley had no capacity to establish that relationship by virtue of her unilateral declaration. (*Fox v. Pollack, supra,* 181 Cal.App.3d at p. 959.)

This interpretation of the Beasley declaration is supported by the second Freudenberger declaration. In that declaration, Freudenberger set forth the history of the *Perry* action. He stated that he had anticipated that Righetti would make the same argument in the *Bartlett* and *Koo* actions as it had in the *Perry* action, to the effect that it did not violate rule 2-100 because it did not know the current Rubio's managers were represented parties. The purpose of his first declaration was to forestall any such claim by putting Righetti on notice that Rubio's considered its current district, general, and assistant managers to be represented by his firm, within the meaning of rule 2-100.

In his second declaration, Freudenberger further explained that "Rubio's [had] correctly asserted [in opposition to the motion to compel] that the current assistant and general managers are 'represented parties' pursuant to [rule] 2-100 because these employees are potentially privy to confidential information about the litigation and their statements may be imputed to the

corporation or may constitute admissions by the corporation. A corporation, like Rubio's here, operates and functions through its officers and managers. Because the current assistant and general managers are considered represented parties pursuant to [rule] 2-100, Plaintiffs are not only not entitled to discover their names, home addresses, and home telephone numbers, but also Plaintiffs' counsel **cannot** have *ex parte* communications with these individuals." (Boldface in originial.)

Perhaps most importantly, Freudenberger declared: "Neither I, nor any attorney in my firm, have ever claimed that [Carlton] has an attorney-client relationship with Rubio's current assistant and general managers or that [Carlton] represents them in their personal capacities. As stated clearly in my previous declaration, **[Carlton] has been retained by Rubio's** and Rubio's is [Carlton's] only client in this matter." (Boldface in original.)

Freudenberger's original assertion that Carlton represented Rubio's managers in their representative capacities, as opposed to their individual capacities, was not entirely unfounded. ■ After all, "[t]he attorney for a corporation represents it, its stockholders and its officers in their representative capacity.[5] He in nowise represents the officers personally." (*Meehan v. Hopps* (1956) 144 Cal.App.2d 284, 290 [301 P.2d 10]; see also *Mills Land & Water Co. v. Golden West Refining Co.* (1986) 186 Cal.App.3d 116, 130 [230 Cal.Rptr. 461] [corporate counsel represented director in his discreet role as such].)

Furthermore, Carlton's concern that Righetti would claim lack of knowledge of representation as a bar to the application of rule 2-100 was valid,

---

[5] Whether this necessarily means Rubio's managers are represented parties within the meaning of rule 2-100 is another matter. Neither party has cited a case addressing whether rule 2-100 is applicable with respect to a corporate defendant's managers in a class action in which those managers may be potential class members. However, it is not unusual for a corporate defendant to claim the application of the rule in that context. (See McClellan, *Restrictions on Attorney Communications with Potential Class Members* (2002) 44-Jul. Orange County Law. 10, 11 ["Corporate defendants often take the position, which is supported by [rule 2-100], that class counsel may not contact the company's managers, even if potential class members, until expiration of the opt-out period"].) Moreover, case law supports the application of the rule to bar or limit plaintiffs' contact with current employees outside of the class action context. (See *Bobele v. Superior Court* (1988) 199 Cal.App.3d 708, 710-711, 714 [245 Cal.Rptr. 144] [in sex and age discrimination case by former employees, plaintiffs' ex parte contact with defendant's current employees was barred].) At the same time, the recent case of *Parris v. Superior Court* (2003) 109 Cal.App.4th 285 [135 Cal.Rptr.2d 90] expresses a general disapproval of restrictions on precertification contact with potential class members, based on freedom of speech concerns. However, that case leaves room for protective orders in appropriate circumstances and, inasmuch as the application of rule 2-100 was not at issue therein, is distinguishable from the cases at hand. In any event, we need not address the proper application of rule 2-100 in the *Bartlett* and *Koo* actions, since the issue is not before us.

even in the absence of the prior history between the two law firms in connection with the *Perry* action. ■ Case law makes clear that rule 2-100 is only a bar to ex parte contact if the lawyer seeking contact actually *knows* of the representation. As explained in *Truitt v. Superior Court* (1997) 59 Cal.App.4th 1183, 1188 [69 Cal.Rptr.2d 558]: "The proscription against ex parte contact does not apply merely because an attorney should know that the opposing party will be represented by some unidentified attorney at some time after a complaint is filed. [Citation.]" "A bright line rule is absolutely necessary in this situation. [Citation.] Lawyers should not be at risk of disciplinary action for violating rule 2-100 because they 'should have known' that an opposing party was represented or would be represented at some time in the future. Rule 2-100 does not provide for constructive knowledge. It provides only for actual knowledge." (*Ibid.*)

(3) *Totality of the Circumstances*

Carlton's effort to invoke the application of rule 2-100, however, did not serve to establish an attorney-client relationship with the individual managers. ■ In determining the existence of an attorney-client relationship we should ask whether the "totality of the circumstances" so indicate. (*Responsible Citizens v. Superior Court, supra,* 16 Cal.App.4th at p. 1733.) "The question of whether an attorney-client relationship exists is one of law. [Citations.] However, when the evidence is conflicting, the factual basis for the determination must be determined before the legal question is addressed. [Citation.]" (*Ibid.*) "Generally, in the absence of express findings, we will presume the court found in favor of the prevailing party on all disputed factual issues. [Citation.] Our task in such cases is to determine if the presumed findings are supported by substantial evidence. [Citation.]" (*Id.* at p. 1734.)

■ In the *Bartlett* and *Koo* actions, the presumed finding that an attorney-client relationship existed between Carlton and the members of the potential class is not supported by substantial evidence. There is no evidence suggesting any of the managers in their individual capacities agreed to be represented by Carlton. Furthermore, Freudenberger's unilateral declaration regarding Carlton's representation of the managers in their representative capacities did not, by itself, create the attorney-client relationship required for disqualification. (*Fox v. Pollack, supra,* 181 Cal.App.3d at p. 959.)

As stated above, there is a distinction between a corporate counsel's representation of corporate officers and managers in their representative

capacities and the representation of those persons in their individual capacities.[6] (*Mills Land & Water Co. v. Golden West Refining Co., supra,* 186 Cal.App.3d at p. 130; *Meehan v. Hopps, supra,* 144 Cal.App.2d at p. 290.) In explaining the intent of his declaration, Freudenberger tried his best to convince the trial court of this distinction before it ruled on the motion. He made this effort not only via his second declaration, but also at oral argument. In addition, before the conclusion of the hearing on the motion to disqualify, Freudenberger offered to file a supplemental declaration to the effect that no attorney or other representative of Carlton had had any contact or communication whatsoever with any of Rubio's current general or assistant managers. He was not given that opportunity, however.

In considering the totality of the circumstances, one should not overlook the obvious. It is untenable that experienced, and presumably ethical, class action defense counsel would deliberately undertake the representation of both the potential class members, i.e., the individual managers in their individual capacities, and the class action defendant, and then announce to the court that it was representing both sides. (See *DCH Health Services Corp. v. Waite* (2002) 95 Cal.App.4th 829, 834 [115 Cal.Rptr.2d 847] ["the court should start with the presumption that, unless proven otherwise, lawyers will behave in an ethical manner"].) The only reasonable inference that can be drawn from Freudenberger's first declaration is exactly what Freudenberger said upon clarification: Carlton represented Rubio's and, to the extent permissible by law, sought to employ rule 2-100 to block Righetti's ex parte communications with Rubio's managers. No trier of fact could reasonably conclude that Freudenberger, by his declaration, meant to say that Carlton represented all parties to the class action, both the potential class members in their individual capacities and the defendant. (Cf. *Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Technology, Inc., supra,* 69 Cal.App.4th at pp. 1406-1407.) The only reasonable conclusion is that he misspoke in his first declaration.

## D. *Exercise of Discretion*

"In exercising [its] discretion [to grant or deny a motion to disqualify], the trial court is required to make reasoned judgments which comply with legal principles and policies. Consequently, the trial court's ruling is subject to reversal where there is no reasonable basis for the action taken. [Citation.]" (*State Farm Mutual Automobile Ins. Co. v. Federal Ins. Co.*

---

[6]As we shall discuss more thoroughly in part II.F., *post,* there is also a distinction between persons titled "managers" who are managing agents authorized to make binding decisions for a corporation and persons called "managers" who have minimal authority and would not qualify as "managing agents" within the meaning of rule 2-100.

(1999) 72 Cal.App.4th 1422, 1428 [86 Cal.Rptr.2d 20].) That is the case here.

■ "Motions to disqualify counsel present competing policy considerations. On the one hand, a court must not hesitate to disqualify an attorney when it is satisfactorily established that he or she wrongfully acquired an unfair advantage that undermines the integrity of the judicial process and will have a continuing effect on the proceedings before the court. [Citations.] On the other hand, it must be kept in mind that disqualification usually imposes a substantial hardship on the disqualified attorney's innocent client, who must bear the monetary and other costs of finding a replacement. A client deprived of the attorney of his choice suffers a particularly heavy penalty where, as appears to be the case here, his attorney is highly skilled in the relevant area of the law." (*Gregori v. Bank of America* (1989) 207 Cal.App.3d 291, 300 [254 Cal.Rptr. 853]; see also *Bell v. 20th Century Ins. Co.* (1989) 212 Cal.App.3d 194, 197-198 [260 Cal.Rptr. 459]; *Mills Land & Water Co. v. Golden West Refining Co., supra,* 186 Cal.App.3d at p. 126; *In re Agent Orange Product Liability Litigation* (2d Cir. 1986) 800 F.2d 14, 19.)

■ Here, there is no evidence that Carlton, by attempting to invoke the rule 2-100 bar on ex parte contact with Rubio's managerial agents, wrongfully acquired an unfair advantage that will undermine the integrity of the judicial process or have a continuing effect on the proceedings. Therefore, there is no reason to disqualify Carlton, with the result that Rubio's is penalized by having to find new counsel.

As stated in *Chronometrics, Inc. v. Sysgen, Inc.* (1980) 110 Cal.App.3d 597, 607 [168 Cal.Rptr. 196], "We detect a common theme in the cases relating to disqualification of attorneys by trial courts. If the status or misconduct which is urged as a ground for disqualification will have a continuing effect on the judicial proceedings which are before the court, it is justified in refusing to permit the lawyer to participate in such proceedings. . . . If, on the other hand, the court's purpose is to punish a transgression which has no substantial continuing effect on the judicial proceedings to occur in the future, neither the court's inherent power to control its proceedings nor [the] Code of Civil Procedure section 128 [statutory powers] can be stretched to support the disqualification."

The closest thing to a transgression in this matter is Freudenberger's statement that his firm represented the managers. Bartlett and Koo have provided no evidence to show that this mistaken declaration will have a continuing effect on the judicial proceedings. It was an abuse of discretion for the trial court to punish Rubio's by disqualifying Carlton solely on account of that declaration.

It is worth repeating that "the traditional rules that have been developed in the course of attorneys' representation of the interests of clients outside of the class action context should not be mechanically applied to the problems that arise in . . . class action litigation." (*In re Agent Orange Product Liability Litigation, supra,* 800 F.2d at p. 19.) Particular care should be taken in the imposition of the sanction of disqualification upon attorneys involved in class action litigation. We strongly discourage application of the "gotcha" doctrine to counsel who has, at worst, either misspoken or urged the interpretation of a rule in a manner that would give his or her client a tactical advantage.

## E. *Judicial Estoppel*

Bartlett and Koo assert that Carlton is judicially estopped from arguing that it does not in fact represent both Rubio's and the potential class members. ■ "Judicial estoppel precludes a party[7] from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position. [Citations.] The doctrine's dual goals are to maintain the integrity of the judicial system and to protect parties from opponents' unfair strategies. [Citation.] Application of the doctrine is discretionary. [Citation.]" (*People ex rel. Sneddon v. Torch Energy Services, Inc.* (2002) 102 Cal.App.4th 181, 189 [125 Cal.Rptr.2d 365].)

■ "The party invoking judicial estoppel must show that (1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding and (2) that the position was adopted by the first tribunal in some manner such as by rendering a favorable judgment. [Citation.]" (*People ex rel. Sneddon v. Torch Energy Services, Inc., supra,* 102 Cal.App.4th at p. 189.) ■ Bartlett and Koo explain that Carlton successfully argued before Judge Ikola that it represented the potential class members, in order to defeat the motion to compel discovery of the names, addresses and telephone numbers of those persons. Bartlett and Koo state that Carlton, having previously argued that the Rubio's managers were "represented parties" within the meaning of rule 2-100, cannot now switch horses and argue that it does not represent those parties.

Bartlett and Koo are, of course, correct that Carlton argued in opposition to the motion to compel that Rubio's managers were "represented parties" within the meaning of rule 2-100. That much is absolutely clear. They are also correct that Carlton (on behalf of Rubio's) obtained a favorable ruling to the extent that Judge Ikola ordered that contact with the current managers take place via deposition only.

---

[7]We observe that Bartlett and Koo seek to apply the doctrine against Carlton, the law firm, rather than Rubio's, the party litigant.

Their analysis is wrong in only one crucial particular: Neither Carlton nor Rubio's has switched horses. Rubio's readily admits to having argued before the trial court that rule 2-100 should apply because Carlton represented its managerial employees. Yet Rubio's also explains now, as it did at the hearing on the motion to compel, that what Freudenberger's first declaration concerning representation of the managers was intended to convey was that Carlton's attorney-client relationship was with Rubio's, but that Rubio's managerial agents were deemed represented by Carlton for the purposes of the application of rule 2-100. Judge Ikola entered an order consistent with this interpretation. Had he construed Freudenberger's declaration in the manner Bartlett and Koo suggest, no doubt he would have responded differently to their assertion that Carlton had a conflict of interest.

We decline to apply the doctrine of judicial estoppel to preclude Rubio's from clarifying its position in a manner consistent with its statements made both before Judge Ikola ruled on the motion to compel and before Judge Jameson ruled on the motion to disqualify.

## F. *Protective Orders*

Our decision addresses only the solitary issue before this court—whether the trial court abused its discretion in disqualifying Carlton. The discovery order permitting contact with Rubio's managers via deposition only is not before this court and Bartlett and Koo make no argument that rule 2-100, to the extent it is implicated in that order, has been improperly applied.

 Nonetheless, we observe that, as a general rule, before class certification has taken place, all parties are entitled to "equal access to persons who potentially have an interest in or relevant knowledge of the subject of the action, but who are not yet parties." (*Atari, Inc. v. Superior Court, supra,* 166 Cal.App.3d at p. 869.) Moreover, cases have stressed "the importance of permitting named plaintiffs to communicate with persons for whose benefit their action was ostensibly filed." (*Id.* at p. 872; see also *Parris v. Superior Court, supra,* 109 Cal.App.4th 285.) This does not mean, however, that potential class members are deemed parties represented by class counsel, within the meaning of rule 2-100, before class certification. (*Atari, Inc. v. Superior Court, supra,* 166 Cal.App.3d at p. 873.)

Whether the reverse could be true in this matter, that is, whether any of Rubio's general or assistant managers, though potential class members, could also qualify as Rubio's managing agents or other employees deemed represented by Rubio's counsel pursuant to rule 2-100, is not before us. (See *Triple A Machine Shop, Inc. v. State of California* (1989) 213 Cal.App.3d

131, 140 [261 Cal.Rptr. 493] [rule 2-100 limits ex parte contact with managing agents or employee's whose acts in connection with the matter may be imputed to the corporation or whose statements may constitute admissions of the corporation].) Moreover, Rubio's has given us no information concerning the level of authority of the general and assistant managers upon which we could make a reasoned determination as to the proper application of rule 2-100.

We do not know whether the general and assistant managers possess the type of binding corporate authority that could potentially qualify them as "managing agents" within the meaning of rule 2-100(B)(1). Even if they do not, the record does not reflect whether they may be employees whose "act[s] or omission[s] . . . in connection with the matter . . . may be binding upon or imputed to the [corporation] for purposes of civil . . . liability or whose statement[s] may constitute . . . admission[s] on the part of the [corporation]." (Rule 2-100(B)(2).) We do not know, for example, whether the general managers are the individuals who simply unlock the doors and check the mayonnaise supply in the morning, or whether they are the persons directly responsible for dictating the tasks and setting the hours for the assistant managers whose overtime pay is at issue. In the latter instance, Rubio's might argue the acts or omissions of the general managers in connection with the hours the assistant managers work could be imputed to it for the purpose of civil liability, potentially invoking the application of rule 2-100(B)(2). We decline to speculate as to the underlying facts in order to resolve the proper application of rule 2-100.

All that being said, "[w]e do not mean to foreclose either party's right to seek any protective order which probable circumstances may make appropriate. We only conclude, consistent with fundamental fairness, that in the absence of such circumstances neither party should be precluded from investigating and preparing the case which [Bartlett] and [Koo] have initiated." (*Atari, Inc. v. Superior Court, supra,* 166 Cal.App.3d at p. 873; see also *Parris v. Superior Court, supra,* 109 Cal.App.4th at pp. 299-301 [trial court may issue rulings on precertification communications when opposing party seeks protective order].)

### III

### DISPOSITION

The disqualification order is reversed. The matter is remanded for further proceedings consistent with this opinion. This court's previously issued stay order is dissolved.

Rubio's has admitted that the disqualification order arose out of sloppy wording in a declaration it filed with the court. In the interests of justice, Bartlett and Koo shall recover their costs on appeal. (Cal. Rules of Court, rule 27(a).)

Sills, P. J., and O'Leary, J., concurred.