Filed 6/13/19

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JANE DOE,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN DIEGO COUNTY,<br><br>Respondent;<br><br>SOUTHWESTERN COMMUNITY COLLEGE DISTRICT et al.,<br><br>Real Parties in Interest. | D075331<br><br><br>(San Diego County Super. Ct.<br> No. 37-2017-00006511-CU-OE-CTL) |

ORIGINAL PROCEEDINGS in mandate following granting of motion to disqualify counsel. Eddie C. Sturgeon, Judge. Petition granted.

Manuel Corrales, Jr., for Petitioner.

Walsh & Associates and Matthew Wallin for Real Party in Interest Southwestern Community College District.

Carpenter, Rothans & Dumont and Justin Reade Sarno for Real Party in Interest Joseph Martorano.

Plaintiff/petitioner Jane Doe, a student-employee in the campus police department at Southwestern College, brought claims relating to sexual harassment and sexual assault against defendants/real parties Southwestern Community College District and three District employees. Her complaint also alleged sexual harassment of two other female District employees, which was presumably relevant to Doe's allegations because it provided notice to the District regarding similar misconduct by at least one of the involved employees, campus police officer Ricardo Suarez. Before her noticed deposition could take place, one of those female employees, Andrea P., was contacted by one of Doe's lawyers, Manuel Corrales, Jr. When they discovered this contact, defendants moved to disqualify Corrales for violating Rule 4.2 of the California State Bar Rules of Professional Conduct, which generally prohibits a lawyer from communicating with "a person the lawyer knows to be represented by another lawyer in the matter."[1] The trial court granted the motion.

Although the District offered to provide counsel for Andrea, there is no evidence that at the time of the contact she had accepted the offer or otherwise retained counsel. Corrales does not dispute that he knew the District was represented by counsel, or that Andrea was a District employee. Whether he violated Rule 4.2 thus turns on subdivision (b)(2), which indicates that "[i]n the case of a represented . . . governmental organization, this rule prohibits communications" with a current employee of the organization, "*if the subject of the communication is any act or omission of such person in connection with the*

---

[1]     All further rule references are to the California State Bar Rules of Professional Conduct unless otherwise indicated.

*matter which may be binding upon or imputed to the organization for purposes of civil or criminal liability*." (*Ibid.*, italics added.)

In this case, Corrales contacted Andrea to discuss evidence of other alleged acts of sexual harassment *by Suarez*. Her role was as a percipient witness. To the extent *her acts* were discussed, Doe is not seeking to hold the District liable for what Andrea did. If she reported acts of sexual harassment to the District, Doe would seek to impose liability for what the District *did not* do in response. Likewise, if Andrea did *not* report the harassment, it might be evidence that the District's sexual harassment policies were inadequate. The purpose of Rule 4.2 is to prevent ex parte contact with employees who engaged in acts or conduct for which the employer might be liable. It is not designed to prevent a plaintiff's lawyer from talking to employees of an organizational defendant who might provide relevant evidence of actionable misconduct by another employee for which the employer may be liable. Accordingly, we will issue a writ directing the superior court to vacate its order disqualifying Corrales as Doe's counsel in this matter.[2]

FACTUAL AND PROCEDURAL BACKGROUND

Doe, a student at Southwestern College, was employed as a Public Safety Assistant by the campus police department. The first amended complaint alleges a series events and occurrences over a number of months ranging from repeated unwelcome sexual comments by Suarez, her immediate supervisor, to and including a sexual assault

---

[2]   Although an order granting a motion to disqualify a lawyer is appealable, review by way of a writ petition is also proper and may be preferable. (See, e.g., *Banning Ranch Conservancy v. Superior Court* (2011) 193 Cal.App.4th 903, 918–919.) We exercise our discretion to follow the latter course in this case.

by defendants Kevin McKean and Joseph Martorano. She asserted that District management responded inadequately to her complaints or not at all. Doe also described instances of sexual harassment by Suarez directed at least two other female employees, one of whom was College Service Officer Andrea P. Defendants characterize Andrea as "a current District employee who may be a percipient witness to some of the allegations giving rise to this lawsuit."

In July 2018, Doe's counsel noticed Andrea's deposition. On August 27, attorney Matthew Wallin—who represents the District, Suarez and McKean—contacted attorney Corrales to inform him that as a current employee Andrea was "entitled to representation." Wallin added that he "was in the process of securing conflict counsel for [her]," which could take "a couple of weeks." He requested that the date for the deposition be rescheduled, and Corrales agreed.

The next day Corrales e-mailed both Wallin and Martorano's separate counsel, Louis Dumont, to inform them that he now represented Andrea. Inferring that Corrales had contacted her, Dumont responded that "it would be improper for you to have contact or discussions with" Andrea because she "will be provided counsel by her employer." Wallin replied a short time later, telling Corrales that because Andrea "is employed by the District, your direct communication with her is improper and your representation creates a conflict of interest." In a follow up e-mail two days later, Wallin asserted that Corrales could not "have direct contact with District employees when you have brought suit against the District."

4

The parties' positions were formalized in letters exchanged a few days later. Wallin began with a letter to Corrales on September 4, claiming that "as of August 27, 2018, you were on notice that [Andrea] was being represented by counsel, and soon thereafter, was going to be represented by alternative counsel." He maintained that Corrales violated former Rule 2-100 (now Rule 4.2)[3] by contacting a current District employee, knowing that the District "and its employees [were] represented by an attorney in the matter at the time of the ex-parte communication." Corrales responded, telling Wallin "[t]he fact that [Andrea] is employed at the College is of no moment at all." He added that if status as a current employee were the only issue, "then no employee could obtain representation for sexual harassment against their employer, but must have their employer provide an attorney for them. That would be absurd."

Defendants then filed a motion to disqualify Corrales as one of Doe's attorneys. Following a hearing, the trial court granted the motion. Implicitly finding that Andrea was a "represented" person as of August 27, the court concluded that "Corrales should not have proceeded to contact [her] directly with regard to even re-scheduling the deposition without her counsel's authorization."

DISCUSSION

---

[3] The California State Bar Rules of Professional Conduct were revised and renumbered effective November 1, 2018. (See *City of San Diego v. Superior Court* (*Hoover*) (2018) 30 Cal.App.5th 457, 462, fn. 1 (*Hoover*).) The substance of former Rule 2-100 became Rule 4.2 of the revised Rules. Here, although the attorney conduct at issue occurred before the effective date of the revised Rules, the motion to disqualify counsel was decided after and the trial court referred to Rule 4.2 in making its decision. For sake of clarity and consistency, we will utilize the new numbering protocol throughout this opinion.

"A court's authority to disqualify a lawyer in a pending proceeding derives from its inherent power to regulate the conduct of court officers, including attorneys, in furtherance of the sound administration of justice." (*Hoover*, *supra*, 30 Cal.App.5th at pp. 469–470.) Although we do not disqualify lawyers for every instance of misconduct, ethical breaches will result in disqualification where it is necessary "to mitigate the unfair advantage a party might otherwise obtain if the lawyer were allowed to continue representing the client." (*Id.* at pp. 470–471; accord *Baugh v. Garl* (2006) 137 Cal.App.4th 737, 744 ["Disqualification is only justified where the misconduct will have a 'continuing effect' on judicial proceedings."].) Here, the trial court disqualified Corrales based on its conclusion that he violated Rule 4.2 by contacting Andrea.

Rule 4.2 provides in pertinent part:

> "(a) In representing a client, a lawyer shall not communicate directly or indirectly about the subject of the representation with a person[] the lawyer knows[] to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer.

> "(b) In the case of a represented corporation, partnership, association, or other private or governmental organization, this rule prohibits communications with: [¶]

> "(2) A current employee, member, agent, or other constituent of the organization, if the subject of the communication is any act or omission of such person in connection with the matter which may be binding upon or imputed to the organization for purposes of civil or criminal liability."

As is relevant for this case, Rule 4.2 does two things. Subdivision (a) tells lawyers they cannot communicate directly with people they know are currently represented by an attorney unless the attorney agrees. "Representation" in this context is largely a factual

6

question, turning on whether the individual retained an attorney, agreed to have any interests represented by counsel, and was known to be represented by the communicating lawyer.  Subdivision (b) addresses the issue of communication where the represented person is an organizational entity.  Here, we are tasked with addressing whether anyone and everyone associated with the entity is "represented" for purposes of Rule 4.2, and how far the scope of representation extends.  The Rule endeavors to explain who is covered, and who is not.

The trial court's order granting the motion to disqualify is not completely clear as to whether it believed Andrea had retained her own lawyer—and was thus a currently "represented" person within the meaning of subdivision (a)—when attorney Corrales contacted her on or about August 28, 2018.  We thus begin by addressing the factual question of actual representation.  We then move to what we believe is the crucial legal issue presented by this petition—whether Andrea was an employee covered by the terms of subdivision (b).  Although we review a decision to disqualify counsel under the abuse of discretion standard, the court's discretion is limited by legal principles underpinning Rule 4.2.  (*Snider v. Superior Court* (2003) 113 Cal.App.4th 1187, 1197 (*Snider*).)

1. *Was Andrea "Represented" by Counsel as of August 27?*

In granting the motion to disqualify, the trial court found that "[o]n August 27, 2018, defendants' counsel placed Corrales on notice that [Andrea] was an employee of defendants and that conflict counsel would be appointed for her deposition." Apparently based on this, the court concluded that "Corrales should not have proceeded to contact [her] directly . . . without her counsel's authorization." It is unclear whether the court believed Andrea's mere status as a current employee was sufficient to preclude contact, or whether other statements or actions by the District's counsel made her a "represented" person.[4]

To the extent defendants are contending that Andrea voluntarily retained separate counsel such that on or about August 27 she was a "represented" person for purposes of Rule 4.2(a), there is simply no evidence that would support such a finding. Her declaration addresses the substance of her claims of sexual harassment; it says nothing about any attempt to retain counsel. Attorney Wallin's declaration merely states that after her deposition was noticed, he communicated with Andrea "that the District would provide her with representation" and that she "never informed me that she did not want District representation." But defendants had no right to compel Andrea to accept their offer of representation. And her silence in response to the District's offer does not

---

4    Elsewhere the court acknowledged "Corrales' understanding that at the time he spoke to her the following day [Andrea] was not represented by either Wallin or Lou Dumont, and [indicated her] desire not to use them."

8

constitute retention of an attorney or her agreement to be represented, by Wallin or anyone else.[5]

Wallin's statement to Corrales that obtaining conflict counsel might take "a few weeks to secure" is a red herring. Had Andrea sought or agreed to representation at District expense, the fact that the particular attorney had not yet been identified would not necessarily mean she was unrepresented for purposes of subdivision (a). Here, however, where the record reveals no steps of any sort *Andrea* took to secure representation, there is simply no basis to conclude she was represented when Corrales contacted her on or about August 28.[6]

2. *Was Andrea a Current Employee Covered by Rule 4.2(b)(2)?*

Even if Andrea had not retained a lawyer and was not a "represented" person as of August 27, Rule 4.2 imposes additional restrictions on lawyers seeking to contact persons *associated with* represented organizational entities. Specifically with regard to current employees, subdivision (b)(2) bars a communication if its subject "is any act or omission of [the employee] in connection with the matter which may be binding upon or imputed

---

[5] The trial court reasoned, "This was not a situation where no counsel was going to represent [Andrea], but a question of who will represent her." But "an attorney's unilateral declaration regarding representation cannot, by itself, create an attorney-client relationship when none otherwise exists." (*Koo v. Rubio's Restaurants, Inc.* (2003) 109 Cal.App.4th 719, 723, 729.) Nothing in the record indicates that Andrea expressly or impliedly agreed to accept any offer of representation. (*Ibid.*)

[6] In light of our conclusion that Andrea was not a represented person on August 27, it necessarily follows that Corrales could not possibly "know" she was represented at the time he contacted her. (Rule 4.2(a).) Certainly there was nothing in Wallin's August 27 e-mail statement to Corrales that would have informed him Andrea had agreed to be represented by counsel.

9

to the organization for purposes of civil or criminal liability."  Thus, as to certain categories of employees discussing certain subjects, opposing counsel simply cannot contact them without advising the employer's counsel.  This appears to be the source of the trial court's concern, and the question is whether Andrea fell within a category of employees as to which ex parte contact is prohibited.

We start with the fundamental proposition that not every current employee of a represented organizational entity is a "represented" person for purposes of Rule 4.2.  (See *Snider*, *supra*, 113 Cal.App.4th at pp. 1198–1202 [tracing the history of former Rule 2-100].)  Indeed, Rule 4.2 (and former Rule 2-100) affirmatively "permit[] opposing counsel to initiate ex parte contacts with . . . present employees (other than officers, directors or managing agents) who are not separately represented, so long as the communication does not involve the employee's act or failure to act in connection with the matter which may bind the [organizational entity], be imputed to it, or constitute an admission of the [entity] for purposes of establishing liability."  (*Triple A Machine Shop, Inc. v. State of California* (1989) 213 Cal.App.3d 131, 140; see also *San Francisco Unified School Dist. ex rel. Contreras v. First Student, Inc.* (2013) 213 Cal.App.4th 1212, 1232–1233 [rule is violated "only if an attorney communicates with an employee of the opposing corporate party about acts or omissions of the employee that might be imputed to the corporation"].)

Defendants make no contention that Andrea, a part-time student-employee of the campus police department, was an officer, director, or managing agent of the District.  They do attempt to argue, however, that her "actions or inactions, and the District's

10

response to those actions or inactions, would certainly give rise to liability against the District."  As we did in *Snider*, we note that this argument fails at the outset "because there is no evidence that the subject matter of the contact[] with the employee[] was concerning 'any act or omission of such person in connection with the matter.' "  (113 Cal.App.4th at p. 1210.)

Andrea was allegedly a victim of sexual misconduct similar to that experienced by Doe.  Her declaration supports this contention.  To the extent she saw or heard anything that could confirm Doe's allegations, the contact by Corrales "did not concern her own actions or omissions concerning the dispute, but her percipient knowledge and understanding of events surrounding the dispute."  (*Snider*, *supra*, 113 Cal.App.4th at p. 1210; see also *Palmer v. Pioneer Inn Associates*, *Ltd.* (9th Cir. 2003) 338 F.3d 981, 988.)  The purpose of the Rule is not to wall off every employee with firsthand knowledge of the relevant facts and prevent them from being asked questions. (See *Curry v. Contra Costa County* (N.D.Cal., Apr. 30, 2014, No. 12-cv-03940-WHO) 2014 U.S.Dist. Lexis 60900, at p. *21 [rejecting defendant's overbroad reading of the rule that "would make all employees who were not specifically represented by counsel and who had knowledge of an event relevant to any incident uncontactable"]; see also *Continental Ins. Co. v. Superior Court* (1995) 32 Cal.App.4th 94, 120, quoting Sinaiko, *Ex Parte Communication and the Corporate Adversary: A NewApproach* (1991) 66 N.Y.U. L.Rev. 1456, 1493 [prohibition on ex parte contact with current employees " 'unduly impedes the flow of information and unnecessarily increases the costs of litigation' "].)

11

Defendants' argument, however, appears aimed at a subtler point. They seem to suggest that Corrales's questions were likely directed at Andrea's reporting or failing to report Suarez's alleged misconduct to the District, and that the District could be liable based on how it responded or failed to respond to any reports that were made. But Andrea's acts in this regard—reporting Suarez's misconduct, if she did so[7]—are not the type "which may be binding upon or imputed to the organization for purposes of civil or criminal liability." (Rule 4.2(b)(2).) The District could not be liable to Doe because Andrea chose to report or chose not to report sexual harassment by Suarez. Andrea's act or her failure to act would not be "imputed to" the District for purposes of imposing liability. The District's liability, if any, would be based on its *own* conduct—its sexual harassment policies and how it responded to any reports of harassment it received. It was error for the superior court to conclude otherwise.

In this respect it is irrelevant whether Andrea was a District employee. She could have been a student or merely a concerned citizen who interacted with Suarez. The primary relevance of her potential testimony is that she may have provided notice to the District regarding Suarez's behavior that could have avoided the harm allegedly suffered by Doe.

We therefore hold that where a plaintiff-employee claiming harassment and/or a hostile work environment seeks to rely on evidence of similar misconduct provided by another alleged employee-victim, ex parte communication with that second employee

---

[7] In her declaration Andrea states that she reported Suarez's harassing conduct to her supervisor.

does not concern "an act or omission of such person in connection with the matter which may be binding upon or imputed to the organization for purposes of civil or criminal liability."[8]  (Rule 4.2(b)(2).)

## DISPOSITION

Let a writ of mandate issue directing the respondent court to vacate its order granting defendant's motion to disqualify attorney Manuel Corrales and enter a new order denying the motion.  The stay issued February 14, 2019 will be vacated when the opinion is final as to this court.  Doe shall recover costs.

DATO, J.

WE CONCUR:

HUFFMAN, Acting P. J.

IRION, J.

---

[8]     We appreciate that counsel on both sides of this case may well have taken certain steps in an effort to achieve a tactical advantage.  We do not fault those efforts; it is, after all, the nature of an adversarial litigation process.  At the same time, we do not necessarily endorse the approach as it played out here.  When the District announced its intent to provide counsel for Andrea, Doe's counsel could have clarified that she was not currently represented and asserted their right to contact her.  If defendants objected, as they surely would have, Doe could have invited them to seek a protective order *before* making contact.

13