Filed 11/20/20

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| BIG LOTS STORES, INC., et al., <br><br>     Petitioners, <br><br>     v. <br><br> THE SUPERIOR COURT OF SAN DIEGO COUNTY, <br><br>     Respondent; <br><br> M. MENLO et al., <br><br>     Real Parties in Interest. | D077486 <br><br><br> (San Diego County Super. Ct. No. 37-2019-00024738-CU-OE-CTL) |

ORIGINAL PROCEEDINGS in mandate following an order revoking the pro hac vice admission of petitioners' out-of-state counsel. Kathleen A. Bacal, Judge. Petition granted.

Haight Brown & Bonesteel, Arezoo Jamshidi, Yvette Davis, and Cory D. Catignani for Petitioners.

Law Offices of David J. Gallo, David J. Gallo and for Real Parties in Interest.

This lawsuit is one of many recent attempts to challenge what some believe are inappropriate efforts by business entities to misclassify workers as "managerial" employees in order to avoid paying overtime and other benefits to which they would otherwise be entitled.  In this case, real parties in interest and plaintiffs Menlo, Ngo, Pedraza and Smith are former store managers for petitioner and defendant Big Lots Inc.[1] who claim they spent less than 50 percent of their worktime on managerial tasks and, as a result, should have been paid overtime compensation for hours worked in excess of a standard 40-hour week.

The writ proceeding before us represents an interesting but minor procedural skirmish in that much larger legal battle.  Big Lots is an Ohio corporation.  When this lawsuit was first filed, it retained a California law firm—Haight Brown & Bonesteel LLP (Haight Brown)—as counsel of record.  Big Lots later sought the superior court's permission for attorneys from an Ohio law firm—Vorys, Sater, Seymour & Pease LLP (Vorys)—to also represent it.  This request is known as an application for an out-of-state lawyer to be admitted "pro hac vice" to practice law before the court.[2]  The trial judge ultimately granted applications filed by three different attorneys in the Vorys firm.  But after later being advised that these Ohio attorneys were attempting to represent various current and former Big Lots managers in depositions noticed by plaintiffs, the court revoked pro hac vice

---

[1]    Plaintiffs also sued a California corporation, PNS Stores, Inc., alleging it did business under a fictitious name, "Big Lots!"  We refer to defendants collectively as "Big Lots."

[2]    "Pro hac vice" means " 'for this occasion.' "  (See 1 Witkin, Cal. Procedure, Attorneys (5th ed. 2020) § 389.)

authorization for all three lawyers. Big Lots asks that we overturn that order by means of this writ petition.

Addressing the narrow issue before us, we chart a course between the polar positions of the two parties. We agree with the trial judge that there is a difference between an attorney's representation of the *defendant corporation* in a lawsuit and his or her representation of *current or former employee witnesses*. Pro hac vice admission as to one client does not necessarily allow a lawyer to represent a different client even if substantive law does not otherwise prohibit it. We nonetheless conclude that the total revocation of pro hac vice status for the Vorys attorneys was not supported by the record then before the court. The scope of the court's pro hac vice orders did not become a disputed issue until after the first two orders were entered, and all the depositions (at which the Vorys attorneys represented the deponent) took place before plaintiffs' counsel raised the issue with the court in conjunction with the third pro hac vice application.

At that point, having clarified the scope of its orders, the trial court could have prohibited *additional* representation of current and former employee-deponents absent further court order (the more limited remedy that plaintiffs requested). And it could have set a further hearing to determine whether, in contacting the prospective deponents, the Vorys attorneys engaged in some form of ethical misconduct that would justify other corrective action. But in advance of such a hearing and appropriately supported findings, the circumstances did not justify barring all further participation by Big Lots' counsel of choice based on conduct that occurred before the issue was ever presented to the trial court. We therefore grant the petition to vacate the revocation order, but return the matter to the trial

3

judge for any additional hearings and/or orders that she deems are warranted.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs' complaint was filed in May 2019.[3]  Roughly four months later, Big Lots submitted two applications to have Vorys attorneys Michael Ball and Jocelyn Hoffman admitted pro hac vice.  As is typically the case, the applications were unopposed and were granted by the court.  Each order permitted the attorney to "appear *pro hac vice* on behalf of Defendants in the above-captioned matter."

Plaintiffs then noticed ten depositions of various Big Lots store managers (referred to by the company as "Store Team Leaders") and district managers (referred to by the company as "District Team Leaders") who supervised them.  Of these, the eight former district managers were no longer employed by Big Lots.  The two store managers remained employed in that capacity.

All ten depositions took place between September 11, 2019 and January 16, 2020, with Big Lots always represented by a Vorys attorney.  At each deposition, plaintiffs' counsel inquired whether the deponent was represented by counsel.  In virtually every case, the witness answered that they had been offered and accepted representation by the Vorys firm.  In one instance, the deponent indicated he had declined the offer.

---

[3]    Prior to filing this action, plaintiffs' counsel filed a lawsuit in federal court on behalf of other Big Lots store managers based on similar overtime claims.  (*Wellons v. PNS Stores, Inc.* (S.D.Cal., No. 3:18-cv-2913 DMS (WVG)) (*Wellons*).)  Unlike this case, the *Wellons* action includes a Private Attorneys General Act (PAGA; Lab. Code, § 2698 et seq.) claim for civil penalties, a portion of which would be paid to affected employees.  (See generally *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 81.)  Discovery in the two actions has been coordinated.

In the meantime, on January 10, 2020, Big Lots filed another application asking to have a third Vorys attorney, Daniel Clark, admitted pro hac vice. This application differed from the previous two in that it noted a dispute between the parties that had arisen during the recent depositions. It explained that while plaintiffs did not oppose the application "to represent the *named Defendants* in this action," it was their position that "should [] Clark seek to represent non-party witnesses in depositions or other matters . . . , he is required to obtain separate approval from the Court." (Italics added in first quote.) Big Lots, on the other hand, "disagree[d] with Plaintiffs' limited opposition." On January 23, the court granted the application but made a point of underscoring the portion of the order that permitted Clark to "appear *pro hac vice* on behalf of <u>Defendants</u> in the above-captioned matter."

Less than a month later, plaintiffs filed a motion to "disqualify the Vorys firm from representing any non-party in this action who is a resident of California, and who testifies in California." At the same time, plaintiffs also asked the court to "consider whether the facts presented herein also warrant disqualification from continued representation of Defendants, and/or revocation of admission *pro hac vice*." They argued that by undertaking to represent nonparty witnesses at depositions, the Vorys firm had exceeded the scope of the pro hac vice orders, which only authorized representation of the two named defendants in the action. Plaintiffs also claimed the Vorys lawyers had committed several ethical violations in connection with soliciting the deponents' consent to be represented. Big Lots opposed the motion, asserting that permission to appear pro hac vice necessarily "includes representing former managerial employees for purposes of their depositions."

5

Following a hearing, the court revoked permission for the three Vorys attorneys to appear pro hac vice. As a threshold matter, it found that the pro hac vice orders did not authorize the Vorys lawyers to represent clients other than the two named corporate entities. Those orders, in the court's view, "made it very clear that it was allowing counsel to appear only on behalf of defendants." It was "[f]or this reason [that] the Court specifically underlined the word 'defendants,' clearly indicating that counsel was allowed to represent the defendants." Accordingly, it determined, "Vorys['s] subsequent representation of defendants' current and former employees exceeded the scope of the *pro hac vice* admissions," and this was grounds to revoke permission for the Vorys attorneys to appear in the action. The court did not address plaintiffs' remaining arguments regarding possible ethical violations by the Vorys firm.

DISCUSSION

As a general rule, "[n]o person shall practice law in California unless the person is an active licensee of the State Bar." (Bus. & Prof. Code, § 6125.) Rule 9.40 of the California Rules of Court creates a limited exception to this general rule by allowing attorneys from another jurisdiction who are not licensed to practice law in California to apply for court permission to participate as counsel in a particular case as long as the client has also

6

retained a California lawyer.[4] This application to be admitted "pro hac vice" is addressed to the court's sound discretion, keeping in mind that " 'the state should keep to a necessary minimum its interference with the individual's desire to defend himself in whatever manner he deems best.' " (*Magee v. Superior Court* (1973) 8 Cal.3d 949, 952; quoting *People v. Crovedi* (1966) 65 Cal.2d 199, 208.) Any decision on the application is reviewed for an abuse of that discretion. (See *Walter E. Heller Western, Inc. v. Superior Court* (1980) 111 Cal.App.3d 706, 711.)

Consistent with the deference owed to a party's counsel of choice, the trial court in this case granted applications for three Vorys attorneys to be admitted pro hac vice to represent Big Lots. But the court later revoked that authorization because the Vorys firm undertook to represent various current and former Big Lots employees when their depositions were noticed in the action. The question we must decide is whether the actions of the Vorys attorneys in soliciting or accepting representation of the current and former employees justified revoking pro hac vice authorization.

A

Big Lots asserts there was no basis to rescind the Vorys attorneys' pro hac vice admission because counsel for a corporation is necessarily *entitled* to represent current and former managerial employees. Thus, in Big Lots' view,

---

4    Subdivision (a) of Rule 9.40 of the California Rules of Court provides in pertinent part: "A person who is not a licensee of the State Bar of California but who is an attorney in good standing of and eligible to practice before the bar of any United States court or the highest court in any state, territory, or insular possession of the United States, and who has been retained to appear in a particular cause pending in a court of this state, may in the discretion of such court be permitted upon written application to appear as counsel *pro hac vice*, provided that an active licensee of the State Bar of California is associated as attorney of record."

permission to represent the employer automatically *includes* permission to represent the management employees. Big Lots goes on to cite the United States Supreme Court decision in *Upjohn Co. v. United States* (1981) 449 U.S. 383 (*Upjohn*) as support for its contention that "[c]urrent and former management employees are part of the corporate defendant." Because the deponents are "part" of the corporation, Big Lots claims its corporate counsel has the "ability" to represent them.

But *Upjohn* and California cases that rely on it (e.g., *Zurich American Ins. Co. v. Superior Court* (2007) 155 Cal.App.4th 1485, 1497) do not address the necessary or even permissible scope of an attorney's representation. They are cases that concern the scope of the *attorney-client privilege* in situations where corporate counsel obtains information from management employees as part of an investigation. They deal with the types of communications that qualify for the protection afforded by the privilege.

This case does not involve communications between corporate managers and corporate counsel that the corporation seeks to shield from discovery by plaintiffs. It does not even raise the issue whether corporate counsel *can* represent current or former management employees when their depositions are noticed. Instead, it asks a much simpler question: When the trial court granted the Vorys attorneys permission to represent Big Lots, did that authorization necessarily extend to representing every current and former Big Lots management employee, regardless of whether those lawyers had ever previously communicated with those employees? The answer to this question is clearly "no." Big Lots is Vorys's client, and the client Vorys was authorized by the court to represent.

The fact that Big Lots might have been entitled to assert the attorney-client privilege as to hypothetical communications between a Vorys lawyer

and a manager-deponent—had there been any—does not mean that every current or former Big Lots manager is automatically a client of the Vorys firm. *Koo v. Rubio's Restaurants, Inc.* (2003) 109 Cal.App.4th 719 (*Koo*) is instructive, albeit in a slightly different context. *Koo* was a wage-and-hour class action brought on behalf of Rubio's restaurant managers seeking overtime pay. Attempting to prevent plaintiffs' counsel from contacting potential class members without notice to Rubio's (see Cal. Rules of Prof. Conduct, rule 4.2 (former rule 2-100)[5]; *Doe v. Superior Court* (2019) 36 Cal.App.5th 199, 205–206), Rubio's corporate counsel filed a declaration in opposition to a motion to compel discovery referencing former rule 2-100 and stating, " 'Rubio's counsel represents Rubio's current assistant and general managers. . . . Therefore, Plaintiff's counsel cannot directly contact these individuals without Rubio's consent.' " (*Koo*, at p. 724.) Explaining that Rubio's current assistant and general managers were putative class members, plaintiffs successfully moved to disqualify Rubio's counsel based on their alleged representation of conflicting interests. Reversing, the Court of Appeal held that "an attorney's unilateral declaration regarding representation cannot, by itself, create an attorney-client relationship when none otherwise exists." (*Id.* at p. 723; see also *id.* at p. 729.) It repeatedly distinguished between counsel's representation of corporate managers in a representative capacity—where the managers are acting as corporate representatives—and representation of managers in their individual capacity—which is what gave rise to the alleged conflict of interest in *Koo*. (*Id.* at pp. 730–733.)

---

[5]     All subsequent rule references are to the Rules of Professional Conduct of the State Bar of California.

Similarly here, the current and former employees were being deposed in their individual capacities. This is not a situation in which plaintiffs seek to hold Big Lots liable for the acts of the manager-deponents as corporate representatives. They are mere witnesses to some of the relevant facts and circumstances.

An analogous issue arises under rule 4.2, which regulates attorney communication with "represented" persons. Generally speaking, a lawyer cannot communicate with a represented person unless that person's attorney gives consent. (Rule 4.2(a).) Subdivision (b) specifically addresses when a person associated with a represented organizational entity is also deemed to be represented by the organization's counsel. Such persons are "represented" in two situations: (1) if they are "[a] current officer, director, partner, or managing agent of the organization," or (2) if they are "[a] current employee, member, agent, or other constituent of the organization [and] the subject of the communication is any act or omission of such person in connection with the matter which may be binding upon or imputed to the organization for purposes of civil or criminal liability."

If Big Lots were contending that the former district managers and/or current store managers were agents of Big Lots within the ambit of rule 4.2(b), it would make sense to argue that the court's pro hac vice authorization for Vorys attorneys to represent the corporate entities necessarily implied permission to represent the managers. That is because, by terms of rule 4.2, certain corporate employees are automatically deemed to be represented persons because the corporation is represented. But Big Lots does not rely on rule 4.2, nor could it. Neither alternative under subdivision (b) extends to former employees, who constitute eight of the ten deponents. And store managers—the job title of the other two deponents—hardly qualify

10

as "managing agent[s]" for purposes of the rule in the context of this case because a store manager could never have "actual authority to speak on behalf of the organization or . . . bind it with regard to the subject matter of the litigation"—i.e., paying overtime to *store managers*. (*Snider v. Superior Court* (2003) 113 Cal.App.4th 1187, 1210.)

Moreover, even Big Lots does not assert that an attorney-client relationship existed between the Vorys firm and the deponents *before* each agreed to accept Vorys's offer of representation. This is made clear by the fact that when one of the deponents declined Vorys's offer, the firm did not assert any right to represent him. Just as in *Koo*, despite an existing attorney-client relationship between the lawyers and the corporation, no attorney-client relationship could be formed with each manager until he or she agreed to be represented by corporate counsel. (*Koo, supra,* 109 Cal.App.4th at p. 729.) For these purposes then, Big Lots and the manager-deponents are separate clients.

Nor does the possibility that corporate counsel might permissibly represent a manager-deponent—if properly requested to do so—mean that representing a deponent is the same thing as representing Big Lots.[6] Having been admitted pro hac vice, the Vorys attorneys were entitled to represent

_____

[6]  Big Lots maintains that because (in its view) the superior court could not properly preclude Vorys from representing the employee-deponents, there was no reason why it should request separate permission. But even if Big Lots' premise is correct, it does not follow that the court would abuse its discretion in believing that notice and potentially a hearing *before* the representation was undertaken would be reasonable. Here, a request by Vorys to represent the deponents would have triggered an objection from plaintiffs' counsel. A hearing on such an objection would then have allowed the court, if appropriate, to set guidelines as to how the deponents would be contacted and what they should be told before they accepted Vorys's offer of representation.

11

Big Lots. If they wanted to represent a different client in this litigation—i.e., current and former employee-deponents—they should have sought the court's permission.

B

But this is not to say that the error by the Vorys attorneys in interpreting the pro hac vice order justifies the wholesale revocation of permission for them to participate as counsel in the case. Revocation of pro hac vice authorization effectively disqualifies the entire Vorys firm, and we have recognized that disqualification is a "drastic remedy" that should only be ordered where attorney misconduct has a " 'substantial continuing effect on future judicial proceedings.' " (*City of San Diego v. Superior Court* (2018) 30 Cal.App.5th 457, 462; quoting *Gregori v. Bank of America* (1989) 207 Cal.App.3d 291, 309.)

In concluding that revocation was appropriate here, the trial court focused on its belief that the pro hac vice orders "very clear[ly]" did not authorize the Vorys lawyers to represent clients other than Big Lots. It was "for this reason" that the court "specifically underlined the word 'defendants'" in the order. Accordingly, "Vorys['s] *subsequent* representation of defendants' current and former employees exceeded the scope of the *pro hac vice* admissions." (First italics added.)

The problem with this rationale is that parties were not aware that the scope of the pro hac vice authorization was an issue until after the depositions began in September 2019. And the issue was not brought to the court's attention until much later. The "order" the court refers to—where it underlined the word "defendants"—was in response to the application by attorney Clark. It was not entered until January 23, 2020. The last deposition at which the Vorys firm purported to represent a deponent was

12

January 16, more than a week *before* the Clark order was filed. Thus, there was no *subsequent* representation of any current or former employee, at least if "subsequent" was intended to refer to a deposition conducted after entry of the Clark order, which arguably clarified the court's intent.

The plaintiffs formally complained to the court by filing their disqualification motion in mid-February. At that point, the Vorys attorneys could have been told that their pro hac vice authorization extended only to the two corporate defendants. They could have been directed not to undertake the representation of any other person or entity without court approval, and (at least temporarily) to discontinue any such representation they had already begun. Finally, if the court was concerned about plaintiffs' allegations that the Vorys lawyers had violated California ethical rules by the manner in which they contacted the deponents and secured their agreement to representation, it could have conducted a hearing, made factual findings, and taken appropriate corrective action as necessary.

Here, however, the evidence adduced so far merely shows that Vorys and Big Lots innocently misinterpreted two pro forma orders granting routine pro hac vice applications. Without more, that is an insufficient basis to effectively disqualify Big Lots' counsel of choice.

C

Focusing on a much bigger picture, both sides urge us to make broad pronouncements they believe will assist them in achieving ultimate victory in this litigation.[7] Big Lots requests that we affirmatively endorse the

---

[7] As part of this effort, both plaintiffs and defendants ask that we take judicial notice of various items they believe provide important "context" for our decision. Plaintiffs also seek to submit "supplemental evidence" in the form of an excerpt from a deposition taken several months after the trial court's ruling, which the court never considered and to which Big Lots had no

representation of both a corporate defendant and individual employees of the corporation by the same lawyer as a matter of California law. Plaintiffs, on the other hand, recite what they perceive to be a litany of ethical missteps by the Vorys firm in contacting and being retained by the prospective deponents. They view Vorys's actions as part of Big Lots' attempt to orchestrate a conspiracy of silence that would hide evidence of Labor Code violations, and they ask us to condemn them as ethical transgressions.

We decline these invitations from both sides, in large measure because the trial court has not yet decided the relevant facts or made pertinent legal rulings. Moreover, the litigation is still at an early stage and our perspective at this juncture is quite limited. We have confidence that the trial court, guided by the general principles we have articulated here, will thoughtfully address in the first instance the broader issues that arise as the litigation progresses and manage the proceedings in a manner that promotes a fair resolution of the controversy.

---

opportunity to respond. All these requests consist largely of items that are neither relevant to our analysis nor necessary to our conclusions. (See *Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063; *City of Grass Valley v. Cohen* (2017) 17 Cal.App.5th 567, 594, fn. 13.) In the case of plaintiffs' request regarding the official comments to the California Rules of Professional Conduct, judicial notice is not required for us to consider such commentary. And although we take judicial notice of the existence of the related federal *Wellons* action (see *ante*, fn. 3), we also decline defendants' request to consider various pleadings and briefs in that action based on the familiar rule that we do not generally take judicial notice of matters that were not before the trial court. (*Cox v. Griffin* (2019) 34 Cal.App.5th 440, 452, fn. 12.) Finally, while we need not take formal judicial notice, we will consider an unpublished order by the district court in *Wellons* as potentially persuasive authority. (*Wellons v. PNS Stores, Inc.* (S.D.Cal. May 11, 2020, No. 18-cv-2913 DMS (WVG)) 2020 U.S.Dist.Lexis 110030.)

Big Lots also points to the parallel *Wellons* action pending in federal district court, reminding us that the depositions were part of coordinated discovery in *both* actions. Relying on the district court's ruling in its favor on a related disqualification motion (*Wellons, supra,* 2020 U.S.Dist.Lexis 110030), Big Lots suggests that even if the pro hac vice order in this case did not extend to appearing as counsel for the current and former employees, the Vorys firm could nonetheless rely on its pro hac vice status in the federal action to represent the deponents.

If Big Lots means to argue that one court's refusal to sanction an attorney for alleged misconduct in coordinated proceedings somehow precludes the other court from taking independent action, we cannot agree. Each court—state and federal—has an independent ability and obligation to ensure that lawyers practicing before it comply with professional rules and the court's orders. In this type of situation, the attorneys are obliged to follow *all* the applicable rules of *both* courts, not the just the ones issued by the court they prefer.

That said, and understanding that it is merely persuasive authority, we do not read the *Wellons* ruling as broadly as Big Lots does. In denying plaintiffs' motion to disqualify the Vorys firm, the district court emphasized the discretionary nature of any decision to disqualify counsel, which depends on balancing numerous factors. (*Wellons, supra,* 2020 U.S.Dist.Lexis 110030, at p.*6.) Noting that the parties vigorously disagreed as to whether Vorys "was able to represent these non-party witnesses at their depositions in this action," it expressly "decline[d] to resolve that dispute." (*Id.* at pp.*10–*11.) Instead, the court simply concluded, in the exercise of its discretion, that the totality of the circumstances did not justify the disqualification of the Vorys firm, "particularly when it appears counsel were acting in good faith and

15

Plaintiffs did not seek court intervention when the issue first arose." (*Id.* at p.*5.)

To that extent, our conclusion here is fully consistent with the district court's reasoning in *Wellons*.[8] The parties construed the pro hac vice orders differently and a dispute arose. But absent special circumstances, a good faith dispute about the scope of a pro hac vice order should not result in disqualification of counsel until the issue has been brought to the attention of the trial judge for clarification. And here, as we have noted, the Vorys lawyers did not attempt to represent any employee-deponents *after* the superior court clarified the scope of its order by underlining the word "defendants" in the Clark order. Under these circumstances, we agree with the district court in the *Wellons* action that revocation of pro hac vice status was not warranted.

---

[8] To the extent the *Wellons* ruling went further to discuss rule 7.3 or any alleged conflict of interest the Vorys lawyers might have had in attempting to represent current store managers potentially affected by plaintiffs' PAGA claim, we offer no comment. As we have explained, the superior court here made no findings or rulings as to those issues and we think it inappropriate to make any observations in a vacuum.

## DISPOSITION

Let a writ of mandate issue directing the respondent court to vacate its order granting plaintiffs' motion to revoke pro hac vice authorization for the three Vorys attorneys and to conduct such further proceedings consistent with this opinion as it may deem appropriate.  The stay issued May 14, 2020 will be vacated when the opinion is final as to this court.  Each party shall bear its own costs.


DATO, J.

WE CONCUR:


MCCONNELL P. J.


HUFFMAN, J.


17